**BP EXPLORATION & OIL INC., Plaintiff,**

v.

**The UNITED STATES, Defendant.**

**No. 97–648 T.**

United States Court of Federal Claims.

April 28, 2000.

---

William S. Lee, Houston, Texas, for plaintiff. Ronald J. Long, Susan A. Leingang, and Nancy T. Bowen, Houston, Texas, of counsel.

Robert Stoddart, Washington, D.C., with whom were Assistant Attorney General Loretta C. Argrett and Chief of the Court of Federal Claims Section Mildred L. Seidman, for defendant.

## ORDER

MOODY R. TIDWELL, III, Senior Judge.

This tax refund case is before the court on defendant's motion for summary judgment and plaintiff's cross-motion for partial summary judgment. The issue is the proper interpretation of former section 4988 of the

1. Unless otherwise noted, all reference to the I.R.C. are to the code existing as of 1985.

2. In 1984, Standard Oil directly owned one hundred percent of the stock of 27 active corporations and indirectly owned numerous other corporations. In 1985, the direct and indirect holdings of Standard Oil remained generally the same as its holdings in 1984, with a few exceptions.

Internal Revenue Code (I.R.C.), 26 U.S.C. § 4988 (1982 & Supp. III 1985).[1] For the reasons set forth below, defendant's motion is granted and plaintiff's motion is denied.

## BACKGROUND

The relevant facts in this case are not in dispute. Plaintiff, BP Exploration & Inc., seeks refunds of windfall profit tax (WPT) paid for all taxable quarters of 1984 and taxable quarters of 1985 ending on June 30, September 30, and December 31. During the periods in issue, plaintiff's name was Sohio Petroleum Company (SPC). SPC was a wholly-owned subsidiary of the Standard Oil Company of Ohio (Standard Oil) and was included in the consolidated federal income tax returns for the affiliated group of corporations (Sohio group) of which Standard Oil was the common parent.[2] Standard Oil was primarily a holding company. Standard Oil was principally engaged in providing management services, including financial services, to its operating subsidiaries. As part of those services, Standard Oil actively directed and controlled the day-to-day and long-term cash management of the Sohio group. Under this centralized cash management system, the entire Sohio group was treated as one economic unit.[3] Standard Oil also funded some of plaintiff's cash requirements by transferring cash on a daily basis, as necessary, to fund plaintiff's debt service obligations, capital expenditures and operating expenses. Standard Oil obtained funds from its subsidiaries with positive cash balances and made cash available to those subsidiaries that needed cash. Additionally, Standard Oil and its subsidiaries paid or incurred interest expense on amounts borrowed for the general corporate purposes of the entire group, including plaintiff's business of finding and producing oil. In addi-

3. Standard Oil's subsidiary Sohio Pipe Line Company is the one exception to the Sohio group and the centralized cash management system. Sohio Pipe Line Company's accounts were not commingled with those of Standard Oil and other subsidiaries due to the fact that Sohio Pipe Line Company was a Federal Energy Regulatory Commission ("FERC") regulated company, and thus required to maintain segregated records and produce independent financial statements.

tion to operating the centralized cash management system, Standard Oil engaged in (1) research and development operations and (2) refining and marketing operations within the state of Ohio.

During the periods at issue, plaintiff was engaged in the business of finding and producing crude oil and natural gas, and it owned an interest in properties that produced crude oil subject to WPT. Plaintiff timely filed its quarterly federal excise tax returns with WPT for the periods in issue. In November 1990, plaintiff filed a claim with the Internal Revenue Service (IRS) for a refund of WPT paid for the four quarters of 1984 which totaled $6,358,533. In December 1990, plaintiff filed a similar claim for a refund of overpayments of WPT for the quarters of 1985 which totaled $4,906,454. While the IRS was examining plaintiff's WPT refund claims, plaintiff amended its claims to include a portion of the net interest expense paid or incurred by Standard Oil and its affiliates as indirect expenses includable in financial overhead to be taken into account for the net income limitation for WPT purposes. Plaintiff's amended claims for WPT refund totaled $24,937,822 for the quarters of 1984 and $17,491,366 for the quarters of 1985.

In December of 1994, plaintiff and the IRS reached partial settlement of plaintiff's claims for WPT refunds. Under the settlement agreement, plaintiff was permitted to allocate its own net interest expense to indirect overhead in determining its net income per barrel of oil, but was not permitted to deduct any portion of the net interest expense of Standard Oil or any other member of the Sohio group. The settlement agreement specifically excepted allocation of the portion of the interest expense paid or incurred by Standard Oil and other corporations in the Sohio group to barrels of taxable crude oil produced by plaintiff and preserved the plaintiff's rights to prosecute with respect thereto. Additionally, plaintiff agreed to a 35% reduction in the amount of additional WPT refund determined as a result of settlement or litigation of the reserved issues. Plaintiff calculates the refunds demanded in the present action by adding to its own overhead a portion of the net interest expense incurred by Standard Oil and other members of the Sohio group.

Plaintiff filed a complaint in this court on September 26, 1997, and subsequently filed an amended complaint on January 1, 1999. Plaintiff alleges that the government erroneously and illegally assessed and collected WPT for all the taxable quarters of 1984 and taxable quarters of 1985 ending on June 30, September 30, and December 31. Plaintiff argues that it is entitled to additional refunds of overpaid WPT because the deposits of WPT paid by plaintiff and the WPT refunds received by plaintiff did not take into account all of the allowable deductions directly attributable and properly apportioned to the barrels of taxable crude oil it produced. Specifically, plaintiff argues that in calculating its WPT liability, it should be able to deduct a portion of the interest expense paid or incurred by its parent, Standard Oil, and a portion of the interest expense paid or incurred by other corporations in the Sohio group from plaintiff's own oil income because the expense (1) was attributable to barrels of taxable crude oil produced by plaintiff and (2) related to the determination of expenses to be taken into account for the net income limitation calculation. Plaintiff seeks a refund totaling $18,253,275 if the court finds that the interest expense of both Standard Oil and its affiliates in the Sohio group should be taken into consideration, or in the alternative, $18,148,190 if the court permits the income expense of Standard Oil alone to be taken into consideration.

On April 8, 1999, defendant filed a motion for summary judgment and requested oral argument. Plaintiff filed a cross-motion for partial summary judgment on June 8, 1999. The court heard oral argument on the parties' motions on January 21, 2000.

## DISCUSSION

In 1980, Congress enacted the Crude Oil Windfall Profit Tax Act (the Act) as a response to the excessive revenues or "windfall profits" oil producers were expected to earn as a result of the decontrol of oil prices. *See* Crude Oil Windfall Profit Tax Act of 1980, Pub.L. No. 96–223, 94 Stat. 229, 26 U.S.C.

§ 4986, et seq. (1982). The Act, effective March 1, 1980, imposed a temporary excise tax[4] on domestic oil producers and royalty owners with respect to their increased revenues attributable to oil price decontrol.[5] *See* I.R.C. § 4986. The Act was designed to tax a portion of the sales price of each barrel of crude oil that was in excess of the previously controlled price level. Specifically, the windfall profit was computed by subtracting the adjusted base price and a severance tax adjustment from the removal or sale price of each barrel of crude oil. *See* I.R.C. § 4988. The windfall profit on each barrel of oil was, however, subject to a net income limitation (NIL). *Id.* The windfall profit on a barrel of oil could not exceed 90% of the net income attributable to such barrel. *Id.* WPT was then computed by multiplying the amount of the windfall profit by the applicable tax rate. *See* I.R.C. § 4987. The rate of tax varied from thirty to seventy percent, depending upon the category of crude oil being taxed and the status of the producer. *Id.*

## I. Cross-motions for Summary Judgment

The court decides this case on cross-motions for summary judgment. Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. *See* RCFC 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is considered material if it might significantly affect the outcome of the suit under governing law. *See Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. This case is well suited for summary judgment because the parties have stipulated to all the relevant facts and the dispute is over a classic legal issue the proper interpretation of a statutory provision. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Quaker State Oil Refining Corp. v. United States*, 24 Cl.Ct. 64, 67 (1991); *State of New Mexico v. United States*, 11 Cl.Ct. 429, 430 (1986). In consider-

ing cross-motions for summary judgment, the court must evaluate each party's motion on its own merits, separate and independent of the other, and resolve all reasonable inferences against the party whose motion is under consideration. *See Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed.Cir.1987).

■ The starting point in every case involving the construction of a statute is the language itself. *See Watt v. Alaska*, 451 U.S. 259, 265, 101 S.Ct. 1673, 68 L.Ed.2d 80 (1981); *State of New Mexico v. United States*, 11 Cl.Ct. 429, 433 (1986). As summarized above, the I.R.C. imposed an excise tax on windfall profit from taxable crude oil. *See* I.R.C. § 4986. The amount of the tax varied depending on the tier of oil and status of producer. *See* I.R.C. § 4987. The I.R.C. also established a NIL on windfall profit which limited the taxable windfall profit to 90 percent of the net income attributable to each barrel of oil. *See* I.R.C. § 4988.

■ At issue in this case is the correct interpretation of the NIL calculation. Specifically, the issue is whether plaintiff can include a portion of the net interest expense incurred or paid by Standard Oil and its affiliates in the Sohio group in indirect overhead when determining "taxable income from the property" in the WPT NIL calculations. Pursuant to I.R.C. § 4988(b)(2), the net income per barrel of oil is determined by dividing—

(A) the taxable income from the property for the taxable year attributable to taxable crude oil, by

(B) the number of barrels of taxable crude oil from such property taken into account for such taxable year.

I.R.C. § 4988.

Treasury regulation section 51.4988–2(b) explains the NIL calculation in greater detail. First, the regulation requires a determination of the "taxpayer's gross income

---

4. As an excise tax, the taxable income of the producer bears no direct relationship to the amount of the tax. The amount of tax depends upon the windfall profit tax classification of the type of oil, status of the producer and the selling price of the oil.

5. The WPT was repealed in the Omnibus Trade and Competitiveness Act of 1988, Pub.L. No. 100–418, § 1941(a), 102 Stat. 1107, 1322, effective August 23, 1988.

from the property (from which the barrel was produced) that is attributable to taxable crude oil for the taxable year." Treas. Reg. § 51.4988–2(b). Second, the regulations require a determination of the "taxpayer's taxable income from the property ... by reducing the taxpayer's gross income ... by all allowable deductions attributable to the production of taxable crude oil that would be subtracted in determining taxable income from the property under section 613(a)." *Id.* Next, determine the net income attributable to the barrel of taxable crude oil by dividing the "taxpayer's taxable income" (as determined above) by the number of units sold ... within the taxable year. *Id.* Finally, the NIL per barrel is determined by multiplying the net income attributable to a barrel of taxable crude oil by 90 percent. *Id.*

Both I.R.C. § 4988(b)(2) and treasury regulation section 51.4988–2(b) make specific reference to I.R.C. § 613 for the determination of "taxable income from the property." I.R.C. § 613 is an income tax provision which permits certain taxpayers to deduct as a depletion allowance a percentage of their gross income from mines, wells, and other natural deposits. I.R.C. § 613 contains a net income limitation capping this deduction: "Such allowance shall not exceed 50 percent of the taxpayer's taxable income from the property (computed without allowance for depletion)." I.R.C. § 613. Although the I.R.C. does not define "taxable income from the property", the regulations to I.R.C. § 613 contain a general definition similar to that described in regulation section 51.4988–2(b)(ii). Treasury regulation section 1.613–5 generally defines "taxable income" as the "gross income from the property ... less all allowable deductions which are attributable to mining processes ... with respect to which depletion is claimed." The regulation also contains an internal reference to treasury regulation sections 1.613–4(d)(2) and (3) to determine the amount of any particular item to be taken into account while determining the taxpayer's taxable income. Treas. reg. § 1.613–5.

Treasury regulation section 1.613–4(d)(2) is of particular importance because the issue before the court is whether a portion of the net interest expense paid and incurred by Standard Oil and the other corporations in the Sohio group can be used to determine plaintiff's "taxable income from the property." Treasury regulation section 1.613–4(d)(2) advises that "only costs actually paid or incurred shall be taken into consideration" in determining the taxpayer's gross income based on the taxpayer's costs. The regulation continues to state that "the amount of any particular item to be taken into account shall ... be the amount used in determining the taxpayer's income for tax purposes." Treas. reg. § 1.613–4(d)(2).

Plaintiff and defendant disagree over the construction of the statutory scheme just presented. Defendant's argument that it is entitled to summary judgment is premised on the general proposition that expenses of other taxpayers are not allowable deductions of a separate taxpayer. In its motion, defendant states that under the applicable regulations, the expenses of Standard Oil and other corporations cannot constitute "allowable deductions" of plaintiff for WPT purposes because plaintiff could not have deducted those expenses for income tax purposes. *See* Treas. reg. §§ 1.613–4(d)(2), 1.613–5 and 51.4988–2. Defendant's argument is based on its interpretation of the NIL and its accompanying regulations. Defendant argues that the costs to be considered in determining the "taxpayer's taxable income from the property" are the costs actually paid or incurred by plaintiff, not by plaintiff's corporate parent or the other corporations in the Sohio group. Defendant relies on the requirements in treasury regulation section 1.613–4(d)(2) that the amount of any particular item to be used in determining taxable income from the property is (a) based on the taxpayer's costs actually paid or incurred and (b) the same amount used in determining the taxpayer's income for tax purposes.

Defendant's argument also seeks to clarify that the "taxpayer" at issue is SPC and SPC alone. Defendant relies on the I.R.C. definition of taxpayer as the person subject to an internal revenue tax.[6] In this case, the person subject to WPT is the producer of the

---

6. *See* I.R.C. § 7701(a)(14).

crude oil. I.R.C. § 4986. Defendant completes its argument that as the taxpayer subject to WPT, only the amount of plaintiff's costs actually paid or incurred and used in determining plaintiff's income for tax purposes should be considered while determining "taxable income from the property" in the WPT calculations. Accordingly, defendant concludes that the interest expense paid or incurred by Standard Oil or its affiliates in the Sohio group are not proper deductions to be considered in plaintiff's WPT NIL calculations.

Defendant also cites to *Chevron, U.S.A., Inc. v. United States,* 77 AFTR 2d (RIA) 96–1412 (S.D.Tex.1995), *aff'd mem.,* 81 F.3d 154 (5th Cir.1996), to persuade this court that plaintiff cannot deduct the interest expense incurred and paid by Standard Oil or its affiliates. In *Chevron,* as in this case, a subsidiary filed amended WPT returns that computed WPT NIL by deducting a portion of the interest expense that its parent had deducted from its own income for income tax purposes. The district court held that a wholly owned subsidiary could not deduct the interest expense of its corporate parent in calculating its own WPT liability. On appeal, the Fifth Circuit, in an unpublished opinion, affirmed the district court's decision on the same grounds and further noted that there is no provision for consolidated WPT returns. Defendant concludes that plaintiff may deduct from its oil income only the amount of net interest expense it actually paid or incurred and that it deducted in determining its taxable income in the 1984 and 1985 consolidated returns.

Plaintiff filed a cross-motion for partial summary judgment arguing entitlement to WPT refunds as a matter of law but reserving the determination of amount for trial. In its cross-motion, plaintiff emphasized the necessity of understanding the centralized cash management system it operated within. According to plaintiff, under the centralized cash management system, funds that were technically borrowed in the name of any member of the Sohio group or for any stated purpose were generally used for the benefit of all members of the Sohio group, including plaintiff, and could be used for purposes oth-er than the stated purpose of the borrowing that was the source of the funds. Therefore, plaintiff argues, interest expense that was technically paid or incurred by Standard Oil or other members of the Sohio group actually benefitted all members of the group, including SPC. Plaintiff is seeking refunds of WPT on the grounds that a portion of the net interest expense that was attributable to barrels of taxable crude oil produced by SPC should be taken into account in computing its NIL on the taxable windfall profit.

Plaintiff argues that its interpretation of the statute and regulations is fully consistent with the controlling regulations, better serves the intention of Congress in adopting the WPT NIL, does not violate the separate entities principle and is not contrary to *Chevron, U.S.A., Inc. v. United States,* 77 AFTR 2d (RIA) 96–1412 (S.D.Tex.1995), *aff'd mem.,* 81 F.3d 154 (5th Cir.1996). Plaintiff's central argument is that it is entitled to take a portion of the net interest expense paid or incurred by Standard Oil and the Sohio group into account in computing the WPT NIL because it is an "allowable" deduction of plaintiff.

Plaintiff relies on treasury regulation section 51.4988–2(b); specifically, plaintiff focuses on the following language in section 51.4988–2(b)(ii): "determine the taxpayer's taxable income from the property ... by reducing the taxpayer's gross income ... by 'all allowable deductions' attributable to the production of taxable crude oil ...." Next, plaintiff cites to *Virginian Hotel Corporation of Lynchburg v. Helvering* and *Sharp v. United States* for the proposition that a deduction is "allowable" if it is permitted under the I.R.C., whether or not the taxpayer claimed the deduction in its return. *See Virginian Hotel Corp. of Lynchburg v. Helvering,* 319 U.S. 523, 63 S.Ct. 1260, 87 L.Ed. 1561 (1943); *Sharp v. United States,* 14 F.3d 583 (Fed.Cir.1993).

Next, plaintiff points to two lines of cases to demonstrate that the interest expense at issue is an "allowable deduction" for plaintiff. First, plaintiff argues that interest expense which is specifically deductible under 163 is also deductible as an ordinary and necessary business expense deductible under 162 based

on *McNutt–Boyce Co. v. Commissioner*, 38 T.C. 462, 1962 WL 1124 (1962), and *Ungerman v. Commissioner*, 89 T.C. 1131, 1987 WL 46821 (1987). Second, plaintiff argues that expenses incurred for the benefit of another corporation cannot be deducted by the payor under I.R.C. § 162 where the expense does not benefit the payor's own trade or business activities based on *Transamerica Corp. v. United States*, 7 Cl.Ct. 119 (1984), and Revenue Ruling 84–68, 1984–1 C.B. 31. In these cases, the court characterized a parent corporations's payment of an expense of its wholly owned subsidiary as a contribution to the subsidiary's capital accompanied by the constructive payment by the subsidiary of the expense, ultimately concluding that the expense could be deducted by the subsidiary under section 162 of the I.R.C. *See Transamerica Corp. v. United States*, 7 Cl.Ct. 119 (1984); Revenue Ruling 84–68. Accordingly, plaintiff argues, the interest expense incurred by Standard Oil and the Sohio group for SPC's benefit cannot be deducted by either under I.R.C. § 162 because it didn't benefit their respective trade or business activities. Rather, plaintiff advocates that the payments by Standard Oil for the benefit of its subsidiaries be treated as contributions to capital of the subsidiaries, with the payments being deductible only by the subsidiaries. Plaintiff suggests similar treatment for the interest expense paid by Standard Oil's subsidiaries on behalf of the Sohio group by classifying the transaction first as a constructive distribution to Standard Oil, followed by contributions to capital of the benefitted subsidiaries, which ultimately results in deductible expenditures by those subsidiaries.

In sum, plaintiff argues that the interest expense is an allowable deduction for the purpose of calculating plaintiff's WPT even though plaintiff did not claim the deduction for income tax purposes because (1) Standard Oil borrowed funds that were used for the benefit of its operating subsidies, including plaintiff; (2) interest expense specifically deductible under I.R.C. § 163 can be deducted as an ordinary and necessary business expense under I.R.C. § 162; and (3) a parent's payment of an expense for the benefit of a subsidiary is treated as a contribution to the

capital of the subsidiary, constructive payment by the subsidiary and a deductible expense of the subsidiary.

Although plaintiff's arguments in response to defendant's motion and in support of its own appeal to the court, plaintiff fails to demonstrate that the interest expense paid or incurred by Standard Oil and its affiliates should be taken into account in determining plaintiff's WPT liability. Fatal to its motion is plaintiff's contention that federal income tax provisions are irrelevant to the proper interpretation of the WPT NIL. Plaintiff's primary argument is that the interest expense at issue is an "allowable deduction" under treasury regulation section 51.4988–2(b). Plaintiff's argument, however, ignores the explicit reference to I.R.C. § 613, a federal income tax provision, found in that same regulation and I.R.C. § 4988. I.R.C. § 4988(b)(3) states that the taxable income from the property shall be determined under section 613(a), and treasury regulation section 51.4988–2(b) directs the taxpayer to determine its taxable income from the property by reducing its gross income by all allowable deductions "that would be subtracted in determining taxable income from the property under section 613(a)." It is clear from the plain language of the statute that "taxable income from the property" for WPT NIL purposes is determined based on federal income tax provisions.

Although I.R.C. § 613 does not define "taxable income from the property", the regulations to I.R.C. § 613 contain the answer to the question presented in this case. Treasury regulation section 1.613–4(d)(2) directs the taxpayer in its determination of the amount of any particular item to be taken into account while determining the taxpayer's taxable income. Treasury regulation section 1.613–4(d)(2) advises that "only costs actually paid or incurred shall be taken into consideration" in determining the taxpayer's gross income based on the taxpayer's costs. The regulation continues to state that "the amount of any particular item to be taken into account shall ... be the amount used in determining the taxpayer's income for tax purposes." Treas. reg. § 1.613–4(d)(2). In this case, plaintiff admittedly did not pay or

incur the interest expense at issue, nor was such interest expense used in determining plaintiff's income for tax purposes. Rather, the interest expense at issue was paid or incurred by Standard Oil or its affiliates in the Sohio group, and used to determine their respective income for tax purposes.[7]

Moreover, the court finds that plaintiff, and not its parent or affiliates, is the "taxpayer" referred to in the WPT Act and its accompanying regulations. In this instance, the statute and accompanying regulations leave no room for the consideration of expenses paid or incurred by anybody other than the taxpayer subject to WPT. Accordingly, the court rejects plaintiff's argument that the WPT NIL should be applied in a manner which "crosses" separate company lines. Rather, the court finds that the taxpayer in this instance is plaintiff because plaintiff alone was legally responsible for the WPT as the producer of crude oil.

The fact that Standard Oil filed a consolidated income tax return does not change this outcome. Pursuant to the regulations governing consolidated income tax returns, consolidated taxable income is determined by taking into account certain consolidated items and "the separate taxable income of each member of the group." Treas. Reg. § 1.1502–11(a)(1). Furthermore, the separate taxable income of a member of a consolidated group is computed in accordance with the provisions of the I.R.C. covering the determination of taxable income of separate corporations. Treas. Reg. § 1.1502–12. Finally, the I.R.C. does not provide for consolidated returns for excise taxes such as the WPT. Unfortunately for plaintiff, the law in this matter does not ignore separate company lines even though the economic reality of Standard Oil's centralized financing system did.

Therefore, the court finds plaintiff's arguments to be without merit. The court finds that defendant, and not plaintiff, has met its burden of showing entitlement to judgment as a matter of law, and plaintiff has not provided any facts establishing that a genuine issue for trial exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

### CONCLUSION

Based upon the foregoing discussion, plaintiff's cross-motion for partial summary judgment is denied, and defendant's motion is granted. The Clerk is directed to enter judgment dismissing the complaint.

**IT IS SO ORDERED.**

---

7. Neither does treasury regulation section 1.613–4(d)(2) permit a taxpayer to consider the expenses paid or incurred by another corporation in calculating the WPT NIL under the guise of cost control. Rather, this provision permits plaintiff to use a reasonable method for determining its costs on the basis of amounts computed for cost control, but not the costs incurred by Standard Oil or its affiliates in the Sohio group.