OVERSEAS THREAD INDUSTRIES, LTD., Plaintiff,

v.

The UNITED STATES, Defendant.

No. 94–327 T.

United States Court of Federal Claims.

Nov. 9, 2000.

Neill G. McBryde, Charlotte, North Carolina, for the Plaintiff.

William C. Rapp, Washington, D.C., with whom were Loretta C. Argrett, Assistant Attorney General, Mildred L. Seidman, Chief, Court of Federal Claims Section, United States Department of Justice, and David Gustafson, Assistant Chief, for the Defendant.

## OPINION

BUSH, Judge.

This matter is before the court on the parties' cross motions for summary judgment. During the taxable years 1987, 1988, and 1989, the taxpayer-plaintiff, Overseas Thread, Inc. (OTI) made overpayments to the Internal Revenue Service (IRS). The

IRS refunded the amount of the overpayments, but the parties differ on the amount of statutory interest due OTI. Therefore, the sole issue for the court to determine is the date that interest starts to accrue, under section 6611 of the Internal Revenue Code (I.R.C.) and the relevant Treasury Regulations.[1] The court rules that section 6611(d), rather than section 6611(b)(3) governs the interest accrual date; and therefore, the court grants plaintiff's motion and denies the Government's cross-motion.

## BACKGROUND

Plaintiff-taxpayer, OTI, is a foreign corporation, organized under the laws of the United Kingdom with its principal offices and headquarters in Manchester, England. It has a United States subsidiary, Tootal Finance, Inc. (TFI). During the taxable years 1987, 1988, and 1989, TFI made distributions to its parent, OTI. At the time of these distributions, both TFI and OTI believed that the distributions consisted of taxable dividends. Pursuant to the United States–United Kingdom Income Tax Convention, TFI withheld five percent of the gross amount of these distributions and deposited this amount with the IRS as income tax withholding. TFI filed Form 1042 "Annual Withholding Tax Return for U.S. Source Income of Foreign Persons" for each of the three taxable years. OTI, however, did not file a tax return for taxable years 1987, 1988, and 1989.

During the last quarter of fiscal year 1990,[2] OTI discovered that the distributions in question partially consisted of returns of capital, which are nontaxable. On or about January 31, 1991, TFI filed amended tax forms to reflect the fact that it now considered portions of the distributions to be nontaxable returns of capital. On February 15,

1. The Internal Revenue Code is codified at Title 26 of the United States Code, and regulations promulgated thereunder are codified in Part 26 of the Code of Federal Regulations (hereinafter "Treas. Reg."). The court will rely on those statutes and regulations in effect at the time of the allowance of the refund of the overpayments. *See Pottstown Iron Co. v. United States,* 282 U.S. 479, 481, 51 S.Ct. 205, 75 L.Ed. 472 (1931) (relying on the statutory provisions in effect at the time that the I.R.S. allowed the refunds);

*United States v. Boston Buick Co.,* 282 U.S. 476, 478, 51 S.Ct. 206, 75 L.Ed. 470 (1931) (same); *see also* 26 U.S.C. § 6407 (defining date of allowance of refund).

2. OTI's fiscal year ended on or about January 31st. Tax year 1987 ended on January 31, 1988; tax year 1988 ended on February 1, 1989; and tax year 1989 ended on January 28, 1990.

1991, OTI filed Forms 1120–F "U.S. Income Tax Return of a Foreign Corporation" for each of the taxable years in question.[3] The IRS acknowledged receipt of these forms on February 22, 1991. In each of these forms, OTI reported the amounts of overpayments.

On January 6, 1992, the IRS refunded the overpaid taxes to OTI with respect to the 1988 and 1989 taxable years. On April 14, 1992, the IRS refunded the overpaid taxes to OTI with respect to the 1987 year. Subsequently, the IRS reconsidered the amount of its refunds and demanded that OTI repay a portion of the interest that the IRS had paid to OTI. OTI repaid the IRS the portion of the refund that the IRS demanded. OTI then sought to persuade the IRS that its position was erroneous regarding the amount of interest to which OTI was entitled. In a letter dated February 17, 1994, the IRS notified OTI that it would not pay the interest that OTI had demanded. The letter cited I.R.C. § 6611(b)(3) as the grounds for the disallowance. This section mandates that, in the event that a taxpayer files a tax return after the date that it is due, interest will not be paid for any period prior to the date that the late return is actually filed. I.R.C. § 6611(b)(3). The IRS computed interest to be due from the date of OTI's filing of the Forms 1120–F, thereby treating these as "late returns," and refused to pay interest in an amount greater than its computation.

■ On May 17, 1994, OTI filed suit in this court seeking $21,020.44, the amount of interest which it had repaid to the IRS as of April 29, 1994. This court has jurisdiction to entertain claims for the allowance of statutory interest on tax refunds. *See* 28 U.S.C.A. § 1491(a)(1) (1994); *see also Brown & Williamson, Ltd. v. United States*, 231 Ct.Cl. 413, 688 F.2d 747, 752 (1982) (determining that the Court of Claims has jurisdiction to decide the date of overpayment for the purpose of determining interest under I.R.C. § 6611).

## DISCUSSION

### I. Summary Judgment Standards

Summary judgment is appropriate where there is no genuine issue of material fact and

the moving party is entitled to judgment as a matter of law. RCFC 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1390 (Fed.Cir.1987). The moving party bears the burden of proof and may discharge its burden by demonstrating an absence of evidence to support the opposing party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). This court, in deciding whether a genuine issue of material fact exists, resolves doubt over factual issues in favor of the party opposing summary judgment. *Mingus Constructors*, 812 F.2d at 1390. Where both parties have moved for summary judgment, as in this case, the court must evaluate each motion on its own merits and is not required to find for one party or the other. *Prineville Sawmill Co. v. United States*, 859 F.2d 905, 911 (Fed.Cir.1988). This case is appropriate for summary judgment because the parties do not dispute the material facts, but instead place before the court a purely legal question concerning the proper interpretation of statutory and regulatory provisions. *See BP Exploration & Oil Inc. v. United States*, 46 Fed.Cl. 526, 529 (2000); *Quaker State Oil Ref. Corp. v. United States*, 24 Cl.Ct. 64, 67 (1991), *aff'd*, 994 F.2d 824 (Fed.Cir.1993).

## II. Legal Background

### A. Statutory and Regulatory Framework

The sole issue in this case is to determine the date that interest starts to accrue on OTI's overpayment. Thus, the provisions in the I.R.C. and the related regulations pertaining to interest govern the court's analysis. To place these provisions in their proper context, it is necessary to proceed through the statutory and regulatory provisions governing the (1) tax assessment; (2) tax collection and reporting; and (3) overpayment.

---

3. Generally, the Treasury Regulations require a taxpayer to file the appropriate tax return to file a claim for a refund of overpayment. Treas. Reg. § 301.6402–3(a)(1).

These events all preceded OTI's claim to statutory interest, and quite naturally inform the discussion of OTI's entitlement to statutory interest.

### 1. Tax Assessment

To the extent the "amount so received is not effectively connected with the conduct of a trade or business within the United States[,]" dividends paid from sources within the United States to a foreign corporation are taxed at a rate of thirty percent. I.R.C. § 881(a). This thirty percent rate is not absolute, however, because the regulations dictate that the source within the United States, the withholding agent, "determine[s] the appropriate rate [of taxation] pursuant to the applicable tax treaty and the regulations issued thereunder." Treas. Reg. § 1.1441–6(a). The applicable United States–United Kingdom treaty establishes a five percent tax rate on dividends paid by United States' subsidiaries to their parent corporations in the United Kingdom. Convention for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion with Respect to Taxes on Income and Capital Gains, Dec. 31, 1975, U.S.-U.K. art. 10, para. 2(b)(*i*), 31 U.S.T. 5668, 5678. TFI applied the five percent rate, established by this treaty, to the dividends it distributed to OTI.

### 2. Tax Collection and Reporting

The I.R.C. and regulations create a system in which tax on a foreign corporation is withheld at the source by the foreign corporation's withholding agent and deposited with the IRS. *See* I.R.C. § 1442 (requiring withholding at source); *see also id.* § 7701(a)(16) (defining withholding agent for purposes of I.R.C. § 1442). The withholding agent must file Form 1042 "Annual Withholding Tax Return for U.S. Source Income of Foreign Persons."[4] Different reporting requirements apply to the foreign corporation whose income is withheld. Section 6012(a) generally creates the requirement for corporations to file a tax return, but gives the Secretary the authority to exempt foreign corporations that are subject to the tax imposed by section 881. Treasury Regulation section 1.6012–2(g) governs the tax return filing requirements of foreign corporations. Except as provided in subparagraph (2) (which will be discussed *infra*), a foreign corporation is required to file a return on Form 1120–F, if it engaged in trade or business in the United States at any time during the taxable year, or received income subject to taxation under the I.R.C. Treas. Reg. § 1.6012–2(g)(1)(i). However, a foreign corporation is not required to file a return (Form 1120–F), if (1) it did not engage in trade or business in the United States at any time during the taxable year; and (2) its tax liability for the taxable year is fully satisfied by withholding at the source [under Chapter 3 (i.e., I.R.C. § 1442)]. *Id.* § 1.6012–2(g)(2)(i)(*a*).

### 3. Overpayment

The Government has the authority to refund an overpayment. I.R.C. § 6402(a). Generally, the taxpayer's claim for a refund of overpayment is made on the original income tax return. Treas. Reg. §§ 301.6402–3(a)(1); 301.6402–3(a)(5). However, amended forms are acceptable. For instance, if the taxpayer filed Form 1120–F for the tax year in question, the regulations require the taxpayer to file an amended Form 1120–F to claim a refund of overpayment. Treas. Reg. § 301.6402–3(a)(3). The information included in such a filing is dictated by Treas. Reg. § 301.6402–3(e), which specifically covers foreign corporations. Typically, the withholding agent would be entitled to the overpayment, but in the event that the withholding agent, as in this case, actually withholds the amount of the tax that results in the overpayment, the withholding agent does *not* have a right to the amount of overpayment. *See, e.g.,* I.R.C. § 1464; Treas. Reg. § 1.6414–1(c); 13

---

4. Treas. Reg. § 1.1461–2(b). The regulation requires the filing of this form on or before March 15 to report withholdings in the preceding calendar year. *Id.* The regulations provide that the withheld amount deposited with the IRS is deemed paid on the last day prescribed for filing Form 1042 (i.e., March 15th). Treas. Reg.

§ 1.6302–2(b)(5). The Federal Circuit has determined that March 15th, the filing deadline for Form 1042, shall be the interest accrual date for foreign, tax-exempt entities. *See MNOPF Trustees Ltd. v. United States*, 123 F.3d 1460, 1465 (Fed.Cir.1997)

JACOB MERTENS, JR., THE LAW OF FEDERAL INCOME TAXATION § 47B:83 (1997).

### 4. Interest

■ A refund claim implicitly carries with it a claim for statutory interest, and thus no separate claim is required to claim interest. MICHAEL I. SALTZMAN, IRS PRACTICE AND PROCEDURE ¶ 6.03, at 6–22 (2d ed.1991). Section 6611 mandates that interest shall be allowed on overpayments. I.R.C. § 6611(a). Generally, the date of interest accrual is the "date of the overpayment." *Id.* § 6611(b)(2). In the case of an advance payment of tax, payment of estimated tax, or credit for income tax withholding, the "date of overpayment" is determined by the provisions of section 6513. *Id.* § 6611(d). Germane to this case, section 6513(b)(3) determines that

> [a]ny tax withheld at the source under chapter 3 [i.e., section 1442] shall, in respect of the recipient of the income, be *deemed to have been paid by such recipient on the last day prescribed for filing the return under section 6012* of the taxable year (determined without regard to any extension of time for filing) with respect to which such tax is allowable as a credit under section 1462.[5] For this purpose, any exemption granted under 6012 from the requirement of filing a return shall be disregarded.

*Id.* § 6513(b)(3) (emphasis added) (footnote not in original). The time for filing in § 6012 is established by I.R.C. § 6072. Foreign corporations must file returns on or before either (1) June 15th following the close of the calendar year; or (2) if the corporation files its returns based on a fiscal year, the 15th day of the sixth month following the end of the fiscal year. *Id.* § 6072(c). For example, because OTI follows a fiscal year that ends on or about January 31st, the deadline for filing its tax return, and consequently the date that its withholding tax is deemed paid under I.R.C. § 6513(b)(3), would be July 15th.

The exception to the general rule employing the date of overpayment as the interest accrual date is "in the case of a return of tax which is filed after the last date prescribed for filing such return...." *Id.* § 6611(b)(3). Under this exception, the date of the filing of the late return marks the date of interest accrual. *Id.* No interest accrues until the date of the filing of the late return. *Id.* In addition, the taxpayer is not entitled to interest on an overpayment of tax if the I.R.S. refunds the overpayment within 45 days of the last day prescribed for filing a return for such tax or within 45 days of the actual date of filing, if the taxpayer files a late return. *Id.* § 6611(e); Treas. Reg. § 301.6611–1(j). Lastly, after ascertaining the proper period of interest accrual, the amount of interest is calculated using the interest rate provided in section 6621. I.R.C. § 6611(a).

### B. The Federal Circuit's *MNOPF* Decision

During the parties' briefing in support of their cross motions, the Federal Circuit issued *MNOPF Trustees Ltd. v. United States,* 123 F.3d 1460 (Fed.Cir.1997), which addressed an issue very similar to the one presented in this case. In *MNOPF,* the Federal Circuit clarified the application of the above-described statutory and regulatory provisions to a foreign entity. The plaintiff in *MNOPF* was a foreign labor organization that invested in the securities of corporations in the United States. *Id.* at 1461–62. As a labor organization, plaintiff was tax-exempt under the I.R.C. *Id.* at 1465. Despite MNOPF"s tax exempt status, the United States banks, which acted as custodians for the foreign labor organization and received its dividends, withheld a percentage from these dividends and transmitted the withheld amount to the IRS. *Id.* at 1462. These banks filed Form 1042 ("Annual Withholding Tax Return for U.S. Source Income of Foreign Persons"), *see id.,* but the plaintiff did not file a tax return for the years in which withholding occurred. *Id.* at 1461, 1464. As a tax exempt organization, MNOPF was entitled to

5. Section 1462 requires the recipient of the income to report the income, upon which the tax is withheld at the source, but also allows the recipient to credit the amount of the withholding against any amount of income tax that would be computed on the return. 26 U.S.C. § 1462.

a full refund of the withheld amount, including appropriate interest. *Id.* at 1462. The IRS advised MNOPF to file a claim for refund on Form 1120–F, but plaintiff instead opted to file Form 990–T "Exempt Organization Business Income Tax Return." *Id.* The Service treated these forms as late returns, and therefore, computed interest from the date that it received them. *Id.*

Before the Court of Federal Claims, the Government asserted that interest accrued on the date of the actual filing of MNOPF's Form 990–T, because this form represented a late return. *MNOPF Trustees Ltd. v. United States,* 33 Fed.Cl. 755, 757–58 (1995), *modified and remanded,* 123 F.3d 1460 (Fed. Cir.1997). MNOPF countered that it was exempt from filing a return and thus the "late return" interest accrual provision could not apply to it. Instead, it asserted that interest accrued from the "date the [custodian] banks made the overpayment or the date the banks' payments (returns) were due[.]" *MNOPF,* 33 Fed.Cl. at 757. The court rejected both parties' arguments, and held that, because plaintiffs made an advance payment of tax, section 6611(d) and section 6513, which section 6611(d) invokes, determined MNOPF's interest accrual date. *Id.* at 758. The court held that, although MNOPF was exempt from filing a tax return for the years in question, section 6513 dictated that the filing deadline (i.e., the fifteenth day of the sixth month) that would have applied (had MNOPF not been exempt from filing) marked the date that interest began to accrue on MNOPF's overpayment. *Id.* at 759.

The Federal Circuit agreed with the Court of Federal Claims' ruling that MNOPF's filing of Form 990–T should not be considered a late return, because MNOPF had no obligation to file a tax return in the first place. *MNOPF,* 123 F.3d at 1464. The Federal Circuit, however, modified the Court of Federal Claims' holding that section 6513 provided the applicable interest accrual date. The court ruled that section 6513, by its terms, did not apply, because MNOPF was not required to file a tax return, as a non-taxable foreign entity. *Id.* at 1465. Instead, the Federal Circuit focused its analysis on the actual or deemed date that the custodian

banks deposited the overpayment with the IRS. Under the Treasury Regulations, the withholding was deemed paid on the last day prescribed for the custodians to file Form 1042. Accordingly, the court concluded that March 15th represented the date of overpayment for purposes of section 6611, and thus marked the interest accrual date. *Id.*

### III. Merits

■ The Government argues that OTI was required to file income tax returns for the taxable years 1987, 1988, and 1989. Consequently, when OTI filed Forms 1120–F for these years on February 15, 1991 to claim a refund of its overpayment, the Government asserts that OTI filed "late returns." Pursuant to section 6611(b)(3), no interest accrues prior to the date of filing late returns; and accordingly the Government asserts that February 15, 1991 represents the interest accrual date in this case.

OTI challenges the Government's argument on the grounds that its filing Forms 1120–F to obtain the refund of its overpayments could not have been considered late returns, because there was no initial requirement to file a tax return for the taxable years 1987, 1988, and 1989. To support its assertion that it was excepted from filing a return, OTI cites Treasury Regulation section 1.6012–2(g)(2)(i)(*a* ), which excuses a foreign corporation from filing a return if its tax is fully paid at the source, and it did not engage in any trade or business in the United States during the year. Treas. Reg. § 1.6012–2(g)(2)(i)(*a* ). OTI, therefore, finds section 6611(b)(3) to be inapplicable, and instead cites section 6611(d) as the appropriate basis of the interest accrual date, because OTI's overpayment resulted from TFI's withholding of the tax at the source. Section 6611(d) pertains to credits for income tax withholding, and directs the taxpayer to adhere to section 6513 to determine the date of overpayment for purposes of determining the allowable interest. Pursuant to section 6513 and other applicable statutes and regulations, OTI was deemed to have paid the tax on the last day prescribed for filing a tax return— July 15th following the close of each taxable year. OTI contends that this date applies,

even though OTI was not required to file a tax return for the years in question.

The Government does not respond to OTI's reliance on section 6611(d), but rather attacks OTI's argument that it was excused from filing a return. The Government contends that OTI was required to file a tax return for the taxable years 1987, 1988, and 1989 because Treasury Regulation section 1.6012–2(g)(2)(i)(*b* )(*2* ) excludes foreign corporations making a claim for a refund of an overpayment from utilizing the exception that OTI cites. Thus, the Government argues that the exception that OTI cites is unavailing. In reaching their conclusions, both parties cite the Federal Circuit's *MNOPF* decision for support. OTI cites *MNOPF* to support its assertion that sections 6611(d) and 6513 apply to OTI. According to OTI, the Federal Circuit, in holding that section 6513 (the statute upon which the brunt of OTI's argument rests) did not apply to a tax-exempt foreign entity, determined that section 6513 does apply to a taxable foreign entity, such as OTI. In contrast, the Government cites *MNOPF* to bolster its argument that OTI was required to file a tax return, because unlike the taxpayer in *MNOPF*, OTI was not a tax-exempt organization.

The court must evaluate each party's motions on their merits because cross motions presently are before the court. *Prineville Sawmill Co.*, 859 F.2d at 911. The court will first address OTI's reliance on section 6611(d), then turn to the Government's argument and determine whether OTI's Forms 1120–F constitute late returns for purposes of section 6611(b)(3).

## A. Does Section 6611(d) Determine the Interest Accrual Date?

Section 6611(d) incorporates section 6513 to determine the date of overpayment, in the event of "[a]dvance payment of tax, payment of estimated tax, and credit for income tax withholding." I.R.C. § 6611(d). Section 6513(b)(3), which pertains to "[a]ny tax withheld at the source" mandates that the last day prescribed for filing a tax return shall be the deemed date of payment. *Id.* § 6513(b)(3). This section specifically in-

structs that an exemption from filing a return shall be disregarded for the purpose of determining the deemed date of payment. *Id.* Stated more clearly: "Subparagraph (3) of this paragraph (b) shall apply even though the recipient of the income has been granted under section 6012 and the regulations thereunder an exemption from the requirement of making an income tax return for the taxable year." Treas. Reg. § 301.6513–1(b)(3). Thus, even if the taxpayer was excused from filing a return, it still must rely on the last day for filing as the deemed date of payment. Because OTI followed a fiscal year that ended on or about January 31st, OTI's tax return filing deadline was July 15th following the close of each fiscal year in question. *See id.* § 6072(c).

OTI asserts that these statutes apply to it in this situation, and therefore the court should adopt July 15th following the close of each fiscal year as the dates of interest accrual. The court agrees with OTI that the express language of sections 6611(d) and 6513(b)(3) appear suited to OTI's circumstances. First, section 6611(d) applies to OTI, because TFI's withholding of the tax at the source essentially was a prepayment of OTI's tax. *See MNOPF*, 33 Fed.Cl. at 756. Second, section 6513(b)(3) applies to OTI because OTI's tax was withheld at the source. Third, the fact that OTI did not file a tax return for taxable years 1987, 1988, and 1989 does not affect OTI's reliance on the prescribed tax return filing date as the deemed date of payment because section 6513(b)(3) instructs the taxpayer to disregard any filing exemptions in applying the tax return filing date. *See* I.R.C. § 6513(b)(3); *see also* Treas. Reg. § 301.6513–1(b)(3). In addition to these reasons, the Federal Circuit, in holding that section 6513 did not apply to a tax-exempt foreign entity, used language that endorses OTI's position:

This provision [§ 6513(b)(3) ] relates to taxes withheld on behalf of a taxable foreign entity, and sets the date on which such taxes are deemed paid when the taxable foreign entity is excused from filing a return because it is not engaged in business in the United States and the amount

withheld is sufficient to cover its entire tax liability.

*MNOPF*, 123 F.3d at 1465. OTI clearly was a taxable foreign entity, unlike MNOPF. Furthermore, OTI asserts it was excused from filing a return based on the fact that TFI withheld OTI's entire tax liability at the source, and OTI did not engage in business in the United States. *See* Treas. Reg. § 1.6012–2(g)(2)(i)(*a*) (providing filing exception).

In conclusion, OTI's reliance on sections 6611(d) and 6513(b)(3) is reasonable given the express language of these statutes and the Federal Circuit's construction of them. However, the court notes that OTI's argument rests on its assertion that it was excused from filing a tax return for the 1987, 1988, and 1989 taxable years. Whether OTI was required to file a tax return also goes to the core of the Government's argument that OTI filed a late return because, if there was no underlying requirement for OTI to file a tax return for those years, its filing of Forms 1120–F could not rightfully be considered "late." *See MNOPF*, 123 F.3d at 1464 ("Merchants Navy was not required to file an income tax return and thus could not have filed a late return."). The court now addresses this issue.

### B. Was OTI Required to File a Tax Return for the Taxable Years 1987, 1988, and 1989?

Section 6012(a) of the Code confers authority upon the Secretary to prescribe limitations and exceptions in the regulations regarding the filing requirements of foreign corporations, such as OTI, that are subject to the tax imposed by section 881. Thus, the supporting regulation, rather than the statute, dictates the filing requirements of foreign corporations. *See* Treas. Reg. § 1.6012–2(g). The general rule in Treasury Regulation section 1.6012–2(g) provides:

> *Returns by foreign corporations.* (1) *Requirement of return*—(i) *In general.*

Except as otherwise provided in subparagraph (2) of this paragraph, every foreign corporation which is engaged in trade or business in the United States at any time during the taxable year or which has income which is subject to taxation under Subtitle A of the Code (relating to income taxes) shall make a return on Form 1120–F.

Treas. Reg. § 1.6012–2(g)(1)(i) (*italics* in original). The exception, referenced in the general rule, and upon which OTI stakes its argument, states:

> *Exceptions*—(i) *Return not required when tax is fully paid at source*—(*a*) *In general.* A foreign corporation which at no time during the taxable year is engaged in a trade or business in the United States is not required to make a return for the taxable year if its tax liability for the taxable year is fully satisfied by the withholding of tax at source under Chapter 3 of the Code.

*Id.* § 1.6012–2(g)(2)(i)(*a*) (*italics* in original). The provision, upon which the Government depends, operates as an exclusion to the exception that OTI asserts, rendering it inapplicable: "(*b*) *Corporations not included.* This subdivision (i) [i.e., exception] shall not apply: … (*2*) To a foreign corporation making a claim under § 301.6402–3 of this chapter (Procedure and Administration Regulations) for the refund of an overpayment of tax for the taxable year[.]" *Id.* § 1.6012–2(g)(2)(i)(*b*)(*2*) (*italics* in original).

The parties each rely on this regulation (1.6012–2(g)), but reach opposite conclusions.[6] OTI claims the exception, Treas. Reg. 1.6012–2(g)(2)(i)(*a*), excused it from filing because, as the language provides, OTI did not engage in business in the United States and its tax liability was satisfied by full withholding at the source. Based on this alleged filing exception, OTI makes two arguments that the late return provision, section 6611(b)(3), does not apply to it. First, because OTI was not required to file a return

---

**6.** Because the plaintiff does not challenge the propriety of this regulation, the court need not determine whether the Treasury Regulation is interpretive or legislative. *See Schuler Indus., Inc. v. United States,* 109 F.3d 753, 754–55 (Fed.

Cir.1997); *Rite Aid Corp. v. United States,* 46 Fed.Cl. 500, 505 (2000). Instead, the court must divine the proper interpretation of this regulation.

for the 1987, 1988, and 1989 taxable years, its filing of Form 1120–F to claim a refund of overpayment could not possibly be considered "late." Second, while the regulations required OTI to file the appropriate return to claim the refund of overpayment, *see* Treas. Reg. § 301.6402–3(a)(1), this return should not be construed to be a late income tax return. In contrast, the Government, based on the plain language of Treas. Reg. 1.6012–2(g)(2)(i)(*b* )(*2* ), contends that the filing exception does not apply to OTI because OTI was seeking a refund of an overpayment. The Government contends that OTI, without the filing exception, was required to file a tax return for the years in question under the relevant statutes and regulations. *See* I.R.C. § 6012; Treas. Reg. § 1.6012–2(g). Having failed to file a return for the tax years in question, OTI's filing of Form 1120–F to claim the refund represented the filing of a late return for purposes of section 6611(b)(3), according to the Government.

The parties' reliance on these two subparagraphs of Treas. Reg. § 1.6012–2(g) puts the court in a quandary. The express language of the subparagraphs that each party cites appears to support each party's position. The court's task will be to harmonize these provisions into a coherent whole that achieves the object of the regulation, yet does not yield preposterous or odd results. *See generally NLRB v. Lion Oil Co.,* 352 U.S. 282, 288, 77 S.Ct. 330, 1 L.Ed.2d 331 (1957) (observing that statutory interpretation should focus on the entire provision, not an isolated subpart, and be guided by the object and policy of the provision); *Yankee Atomic Elec. Co. v. United States,* 112 F.3d 1569, 1576 (Fed.Cir.1997) (requiring a statute to be understood as a whole), *cert. denied,* 524 U.S. 951, 118 S.Ct. 2365, 141 L.Ed.2d 735 (1998); *Green v. Bock Laundry Mach. Co.,* 490 U.S. 504, 509–11, 109 S.Ct. 1981, 104 L.Ed.2d 557 (1989) (opining that the literal reading of a statute should not be followed if it renders an odd and unfair result).

Under the Government's interpretation of regulation § 1.6012–2(g)'s general rule, exception, and exclusion, the result is that a foreign corporation with income taxable under the I.R.C. must file an income tax return for the taxable year (general rule), except where the foreign corporation has no trade or business in the United States and satisfies its tax liability through full withholding at the source (exception), *and* the foreign corporation is *not* making a claim for the refund of an overpayment of tax for the taxable year (exclusion stated in negative). *Id.* § 1.6012–2(g)(1)–(2). The Government contends OTI is a foreign corporation that is making a claim for refund of an overpayment; and therefore, OTI was required in the first instance to file income tax returns for the 1987, 1988, and 1989 taxable years.

The Government's interpretation, however, leads to an odd result. Requiring OTI to file an income tax return in this case would mean that a foreign corporation that satisfies section 6012's elements for a taxable year—no business or trade in the United States and full withholding at the source—must nevertheless file an income tax return at that time based on its expectation that the full withholding may result in an overpayment for which it will claim a refund.[7] To adopt the Government's interpretation in this case would then, in effect, constrict the utility of Treas. Reg. § 1.6012–2(g)'s exception. A taxpayer in OTI's position that satisfies the express standards of the filing exception would be forced to choose between two unappealing alternatives under the Government's interpretation: forego the exception and bear the burden of filing an income tax return based on the likelihood, great or small, that an overpayment may be discovered in the future, or utilize the exception and forfeit its

7. The following discussion only concentrates on the taxpayer's entitlement to interest, not the refund of overpayment. The reason for this is that under the Government's interpretation, if the foreign corporation fails to file an income tax return, the taxpayer should only lose its right to the amount of interest that would have accrued between the prescribed filing deadline, *see* I.R.C. §§ 6611(d) & 6513(b)(3), and the taxpayer's actu-al date of filing a return. *See* I.R.C. § 6611(b)(3). Although forfeiting interest, if the taxpayer fails to file a return until claiming a refund, the taxpayer does not necessarily forfeit its right to claim a refund of the overpayment (assuming it files the appropriate tax return, and otherwise meets the applicable statute of limitations).

ability to maximize interest on any resulting overpayment.[8] The court is unwilling to embrace the Government's interpretation of Treas. Reg. § 1.6012–2(g), which would force taxpayers in OTI's position to choose between the lesser of two evils.

■ The proper interpretation of Treas. Reg. § 1.6012–2(g) gives effect to the general rule, exception, and exclusion, but does not give too much weight to one provision at the expense of another, as the Government's interpretation does. Thus, a foreign corporation taxpayer should be permitted to take advantage of the exception if it did not engage in business in the United States and had its tax liability fully satisfied through withholding at the source. Treas. Reg. § 1.6012–2(g)(2)(i)(a). A foreign corporation should not be permitted to take advantage of the exception when it is "making a claim under § 301.6402–3 . . . for the refund of an overpayment of tax for the taxable year[.]" Treas. Reg. § 1.6012–2(g)(2)(i)(b)(2). If the foreign corporation is making a claim for the refund of the overpayment during the requisite filing period for the taxable year, then clearly, on two separate grounds, it would *not* be excused from filing an income tax return. *See* Treas. Reg. § 1.6012–2(g)(2)(i)(b)(2) (rendering filing exception inapplicable where foreign corporation is claiming a refund of overpayment); *id.* § 301.6402–3(a)(1) (requiring taxpayer to file the appropriate income tax return to claim a refund). In fact, in this example, the filing would be both an income tax return and a claim for refund. However, if the foreign corporation meets the exceptional circumstances and does not file an income tax return for that taxable year, but later discovers the existence of an overpayment after the close of the applicable income tax return filing period, the foreign corporation would be required to file a return to claim the refund. *Id.* § 301.6402–3(a)(1). Yet, this return should not be considered to be a late-filed income tax return because at the time the income tax return would have been due, the foreign corporation qualified for the filing

exception. *Id.* § 1.6012–2(g)(2)(i)(a). Thus, the late return provision would not apply to establish the interest accrual date because there was no requirement to file a tax return. *See MNOPF*, 123 F.3d at 1464. Instead, section 6513 (through incorporation by reference in section 6611(d)) would apply to set the interest accrual date. The express language of section 6513(b)(3) and its related regulation § 301.6513–1(b)(3) are harmonious with this interpretation, because they each note that the last day prescribed to file a return shall apply as the interest accrual date, even though the recipient of the income was granted an income tax return filing exception under section 6012 and the regulations. *See id.* § 6513(b)(3); Treas. Reg. § 301.6513–1(b)(3). Because this interpretation harmonizes the relevant provisions, *see Zenith Elecs. Corp. v. Exzec, Inc.*, 182 F.3d 1340, 1347 (Fed.Cir.1999), and yields a reasonable result, *see Commissioner v. Lundy*, 516 U.S. 235, 247, 116 S.Ct. 647, 133 L.Ed.2d 611 (1996), the court adopts it.

Accordingly, section 6513(b)(3), through section 6611(d), establish the appropriate date of interest accrual in this case. Because OTI did not file a late return, § 6611(b)(3) does not apply to establish the interest accrual date. This holding should not be considered to favor section 6611(d) over § 6611(b)(3). Section 6611(b)(3) applies in appropriate cases. The facts in this dispute, however, do not present such a case. Therefore, the court, in applying section 6513(b)(3), embraces the policy generally underlying the interest provisions in the I.R.C.: "to remove the factor of the time value of money from tax procedures, in fairness to the public and to the public fisc." *MNOPF*, 123 F.3d at 1465. The court concludes that, pursuant to I.R.C. § 6513(b)(3), July 15th following the close of each of OTI's fiscal years represents the date from which interest accrues in this case.

## CONCLUSION

The court concludes and it is hereby **ORDERED** that:

---

**8.** Of course, if the taxpayer, unlike OTI in this case, knows that its full withholding, at the time it occurs, will result in an overpayment for which it will seek a refund, then the taxpayer would be required to file an income tax return for that taxable year. To find otherwise would nullify Treas. Reg. § 1.6012–2(g)(2)(i)(b)(2).

(1) For the reasons stated above, Plaintiff's Motion for Summary Judgment is **GRANTED** and Defendant's Cross–Motion for Summary Judgment is **DENIED**.

(2) On or before **January 5, 2001**, the parties shall **FILE** a **JOINT STATUS REPORT** stipulating the amount of interest that the United States owes plaintiff. The parties shall use July 15th following the close of each of OTI's fiscal years at issue as the date from which interest accrued. The parties shall use the appropriate interest rate as determined by I.R.C. § 6621. If the joint status report indicates agreement by the parties on the amount of interest owed, then the court will direct the Clerk to enter judgment for plaintiff in the agreed upon amount.

(3) Both parties shall bear their own costs.