Jeffrey G. SHARP, Plaintiff–Appellee,

v.

The UNITED STATES, Defendant–
Appellant.

No. 93–5111.

United States Court of Appeals,
Federal Circuit.

Dec. 28, 1993.

Before NEWMAN, LOURIE, and SCHALL, Circuit Judges.

LOURIE, Circuit Judge.

The United States appeals from a decision of the United States Court of Federal Claims[1] granting summary judgment in favor of taxpayer Jeffrey G. Sharp on his claim for a tax refund and denying the United States' cross-motion for summary judgment. *Sharp v. United States*, 27 Fed.Cl. 52 (Ct. Fed.Cl.1992). Because the Internal Revenue Code ("IRC" or "Code") in effect at the relevant time did not limit the carryover of investment interest to the amount of taxable income in the year the interest was paid or accrued, we affirm.

## BACKGROUND

The material facts are undisputed. Sharp filed an amended tax return for 1987, seeking a refund of taxes in the amount of $59,-736.00.[2] For each of the taxable years 1983 through 1986 (the loss years), Sharp paid or accrued investment interest as defined by § 163 of the IRC. *See* 26 U.S.C. § 163(d)(3)(D).[3] The amount of investment interest that Sharp was able to claim as a deduction for each of these years was limited by § 163(d)(1) to the sum of $10,000 plus Sharp's net investment income (investment income less investment expenses). *See* 26 U.S.C. § 163(d)(1). For the years in question, Sharp's investment interest exceeded his § 163(d)(1) limitation. Nonetheless, in his return, he claimed that he was entitled to carry over from the loss years and deduct in 1987 the entire amount of his investment interest that exceeded the § 163(d)(1) limita-

Keith A. Jones, Fulbright & Jaworski, L.L.P., Washington, DC, argued for plaintiff-appellee. With him on the brief were Charles W. Hall, John R. Allender, and Ronald W. Adzgery, Fulbright & Jaworski, L.L.P., Houston, TX.

Gilbert Rothenberg, Atty., Dept. of Justice, Washington, DC, argued for defendant-appellant. With him on the brief were Michael L. Paup, Acting Asst. Atty. Gen., Gary R. Allen and Teresa T. Milton, Attys.

1. Pursuant to Title IX of the Federal Courts Administration Act of 1992, Pub.L. No. 102–572, 106 Stat. 4506, the United States Claims Court was renamed the United States Court of Federal Claims, effective October 29, 1992.

2. With his 1987 tax return, Sharp paid taxes in the amount of $63,329. In 1989, Sharp filed an amended return for 1987, based on a change in his method of accounting for that year, requesting a refund of taxes paid plus interest. In 1991, the IRS disallowed Sharp's claim for refund and assessed unpaid taxes and penalties due of $34,-028, which Sharp paid. Here, Sharp demands the total tax and interest paid for 1987 ($97,357, consisting of the $63,329 paid with the 1987

return plus the $34,028 of taxes and penalties assessed by the IRS and paid in 1991) less what Sharp claims actually was due for 1987 ($37,-621) = $59,736.

3. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect during the years 1983–86. Section 163(d) was originally passed in 1969 and amended in 1976 and 1986. The changes enacted by the Tax Reform Act of 1986 took effect for tax years beginning after Dec. 31, 1986. The version of § 163(d) applicable to Sharp for the tax years at issue is that in effect after the 1976 amendment and before the 1986 amendment.

tion in each loss year pursuant to the carryover provision of § 163. *See* 26 U.S.C. § 163(d)(2). Sharp computed his carryover of investment interest to be $223,978, obtained by adding the carryover from 1983 to the excess investment interest in 1984, 1985, and 1986.

The following chart will be helpful in understanding Sharp's claim and the computation of his investment interest carryover.

|  | 1983 | 1984 | 1985 | 1986 | 1987 |
|---|---|---|---|---|---|
| investment interest paid | $42,857 | $89,111 | $87,292 | $92,362 | $164,392 |
| net investment income | $87,791 | $16,321 | $2,075 | $0 | $539,035 |
| § 163(d)(1) limitation | $97,791 | $26,321 | $12,075 | $10,000 | $549,035 |
| excess investment interest over § 163(d)(1) limitation | $3,609[4] | $62,790 | $75,217 | $82,362 | $0 |
| taxable income/(loss) | $82,300 | $(5,852) | $42,954 | $(6,894) | not relevant |
| IRS's computed carryover limit | $3,609 | $0 | $42,954 | $0 | not relevant |

The IRS disallowed most of the claimed deduction for carried-over investment interest on the theory that the amount of investment interest a taxpayer was entitled to carry over from a particular loss year was limited by the amount of taxable income for that loss year. The IRS notified Sharp that his claim for refund was disallowed and issued a notice of deficiency, assessing taxes and penalties, which Sharp paid. *See supra* n. 2. Sharp then filed a complaint seeking a refund in the United States Court of Federal Claims.

In due course, Sharp filed a motion for summary judgment claiming that, as a matter of law, he was entitled to carry over and deduct in 1987 the investment interest he did not deduct in loss years 1983–86 because of § 163(d). The government filed a cross-motion for summary judgment, urging that the investment interest Sharp was entitled to carry over from a loss year was limited to his taxable income in that year. The government based its position on "§ 163(d) 'construed as a whole'; the general 'scheme of interest deductibility in general' revealed in the legislative history of § 163(d); and the text of § 172(d)(4)." [5] *Sharp,* at 55.

Contrary to the government's position, the trial court held that according to the plain meaning of the statute, "disallowed investment interest" for the purpose of the carryover subsection (d)(2) is interest "not allowable" as a deduction solely by reason of the limitation in subsection (d)(1), irrespective of whether the interest exceeds taxable income for a loss year.[6] The court was not persuaded by contrary statements in the legislative history because it concluded that § 163(d)(2) was not ambiguous and the legislative history was "equivocal" and not a good indication of Congressional intent. The court refused to elevate statements in the legislative history over the plain language of the statute. The court concluded that to permit the carryover of investment interest from a loss year in excess of taxable income for that loss year would be consistent with the purpose of § 163(d), which is to offset investment income against expenses from the same type of investment activity.

4. Although the amount of investment interest that Sharp paid in 1983 did not exceed his § 163(d)(1) limitation, he was entitled in 1983 to a carryover from 1982 of $58,543. The total of his 1983 investment interest and his carryover, $101,400, exceeded his § 163(d)(1) limitation for 1983 by $3,609.

5. The government contended that the "net operating loss" provision of the Code, § 172, forbids the carryover of non-business interest under § 163. The court disagreed, concluding that § 172 deals with entirely different categories of deductions, based upon entirely different theories. Before this court, the government does not argue that § 172 is directly applicable.

6. At least three other courts have permitted carryovers in excess of taxable income for a loss year. *See Beyer v. Commissioner,* 916 F.2d 153 (4th Cir.1990); *Lenz v. Commissioner,* 101 T.C. No. 17, 1993 WL 393870 (1993); *Flood v. United States,* Civ. No. A92–046 (D.Alaska Mar. 15, 1993), *appeal docketed,* No. 93–35429 (9th Cir. filed May 3, 1993).

## DISCUSSION

■ We review a decision of the Court of Federal Claims to grant or deny summary judgment *de novo*. *See Quaker State Oil Refining Corp. v. United States,* 994 F.2d 824, 826 (Fed.Cir.1993). Under that standard, we evaluate the correctness of the decision as a matter of law and decide *de novo* whether genuine issues of material fact exist. *Id.* There being no dispute as to any material fact here, our review of the decision below turns on the proper interpretation of § 163, a question of law for our *de novo* determination. *See id.* at 826–27.

■ In determining whether or not the Court of Federal Claims erred in concluding that Sharp is entitled to summary judgment, we must decide whether § 163(d)(2), which authorizes a carryover of certain investment interest, permits a taxpayer to carry over from a loss year and deduct in a future year investment interest that exceeds his taxable income in the loss year. Specifically, we must determine whether the portion of investment interest in excess of taxable income that is not allowable as a current deduction by virtue of § 163(d)(1) constitutes "disallowed investment interest" as defined by § 163(d)(3)(E) and thus may be carried over pursuant to § 163(d)(2). The government argues that the carryover is subject to an implicit limitation equal to the taxpayer's taxable income for the year in which the deductible expense was incurred. Sharp argues that no such limitation exists. We agree with Sharp.

In interpreting a statute, we first turn to its language. *VE Holding Corp. v. Johnson Gas Appliance Co.,* 917 F.2d 1574, 1579 (Fed. Cir.1990), *cert. denied,* 499 U.S. 922, 111 S.Ct. 1315, 113 L.Ed.2d 248 (1991) (citing *Mallard v. United States Dist. Court for S. Dist. of Iowa,* 490 U.S. 296, 300–01, 109 S.Ct. 1814, 1817, 104 L.Ed.2d 318 (1989)). Section 163 deals with the deduction of interest and provides, in pertinent part

### § 163 Interest

#### (a) General Rule

There shall be allowed as a deduction all interest paid or accrued within the taxable year on indebtedness.

#### (d) Limitation on Interest on Investment Indebtedness

##### (1) In general

In the case of a taxpayer other than a corporation, the amount of investment interest (as defined in paragraph (3)(D)) otherwise allowable as a deduction under this chapter shall be limited, in the following order, to—

(A) $10,000 ..., plus

(B) the amount of the net investment income (as defined in paragraph (3)(A))

. . . .

##### (2) Carryover of disallowed investment interest

The amount of *disallowed investment interest* for any taxable year shall be treated as investment interest paid or accrued in the succeeding taxable year.

##### (3) Definitions

For purposes of this subsection—

##### (A) Net Investment Income

The term "net investment income" means the excess of investment income over investment expenses.

. . . .

##### (B) Investment income

The term "investment income" means—

(i) the gross income from interest, dividends, rents, and royalties,

(ii) the net short-term capital gain attributable to the disposition of property held for investment, and

(iii) any amount treated under sections 1245, 1250, and 1254 as ordinary income,

but only to the extent such income, gain, and amounts are not derived from the conduct of a trade or business.

##### (C) Investment expenses

The term "investment expenses" means the deductions allowable under sections 162, 164(a)(1) or (2), 166, 167, 171, 212, or 611 directly connected with the production of investment income.

. . . .

##### (D) Investment interest

(i) In general The term "investment interest" means interest paid or accrued on indebtedness incurred or continued to purchase or carry property held for investment.

. . . .

**(E) Disallowed investment interest**

The term *"disallowed investment interest" means with respect to any taxable year, the amount not allowable as a deduction solely by reason of the limitation in paragraph (1).*

26 U.S.C. § 163 (1982 and Supp. III 1985) (emphasis added).

Pursuant to § 163(a), Sharp was permitted to deduct all interest paid or accrued within a taxable year on indebtedness to purchase or carry his investment property up to the amount defined in subsection (d)(1). Sharp's investment interest otherwise allowable as a deduction was limited by subsection (d)(1) to $10,000 plus the amount of his net investment income (the excess of his investment income over his investment expenses). Sharp was permitted under the carryover provision, subsection (d)(2), to treat as investment interest paid or accrued in the succeeding taxable year the amount of "disallowed investment interest" for any earlier taxable year. Subsection (d)(3)(E) defines "disallowed investment interest," with respect to any taxable year, as "the amount [of investment interest] not allowable as a deduction *solely* by reason of the limitation in [§ 163(d)(1)] (emphasis added)." Thus, in accordance with § 163(d)(3)(E), disallowed investment interest to be carried over under § 163(d)(2) included all investment interest that would have been "allowable as a deduction" *but for* the limitation prescribed by § 163(d)(1). Conversely, items of investment interest that would not have been "allowable as a deduction" for reasons other than § 163(d)(1) may not be carried over.

The government admits that no other provision of the Code specifically prohibits the allowability as a deduction of investment interest exceeding taxable income in the loss year. Rather, according to the government's argument, such a limitation is basic to the tax law. The government asserts that investment interest that exceeded a taxpayer's tax-able income in the loss year was not deducted in that year because "the annual principle of tax accounting had long dictated that interest expense in excess of taxable income would not confer any tax benefit even though it was, strictly speaking, 'deductible.' . . . [T]he amount of tax due would be the same, whether taxable income was zero or whether it was less than zero." The government's argument continues, "only the 'amount' of interest that is not *deducted solely* because of the Section 163(d)(1) limitation can be eligible for carryover to a subsequent taxable period. Since the amount of investment interest that exceeds a taxpayer's taxable income would not be *deducted* in that year *regardless* of Section 163(d), that amount simply does not fit within the description of the carryover amount (emphasis added)."

The government's reasoning avoids focus on the plain language of the statute itself. Resolution of the meaning of § 163(d)(2) turns on the words "amounts not allowable as a deduction solely by reason of the limitation in · [§ 163(d)(1)]." The narrow question therefore is: but for § 163(d)(1), would investment interest in excess of taxable income be "allowable as a deduction"? Since the only other "limitation" relied upon by the government is the conclusion that items exceeding a taxpayer's taxable income *would not in fact be deducted* so as to produce a tax benefit, we must determine whether items exceeding a taxpayer's taxable income, and thus not actually deducted, are nonetheless "allowable as a deduction."

The government does not seriously contest the meaning of the phrase "allowable as a deduction," and in oral argument before this court, conceded that "if you focus solely on this word 'allowable' and do not look at the legislative history, I think we lose." We must focus on the word "allowable" because it is the language of the statute; it is dispositive in this case.

■ In common usage, the word "allowable" means "permissible: not forbidden: not unlawful or improper." Webster's Third New International Dictionary (1986). Thus, a deduction is "allowable" under the Code if some provision of the Code permits it to be

taken as a deduction and no other provision of the Code acts to limit or forbid it as a deduction. *See Perrin v. United States,* 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979) ("A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking their ordinary, contemporary, common meaning."). An item may be an allowable deduction even though it provides no current tax benefit.

Not only is such a construction consistent with the common meaning of the word, it is consistent with the usage of the word in the context of the IRC. In an opinion from the IRS General Counsel's office, the IRS acknowledged that all otherwise allowable deductions are "allowable" as deductions and may be deducted even when they "exceed adjusted gross income and, thereby provide no regular income tax benefit to the taxpayer." Gen.Coun.Mem. 37,879 (Mar. 13, 1979). Moreover, in a published ruling by the IRS during the administrative review of another taxpayer's case concerning the carryover provision at issue here, an illustrative example involving taxpayer "A" explained that "A's *allowable* deductions ... in 1984 exceeded A's adjusted gross income for that year ... and resulted in no taxable income." Rev. Rul. 86–70 1986–1 C.B. 83 (emphasis added); *see also Virginian Hotel v. Helvering,* 319 U.S. 523, 63 S.Ct. 1260, 87 L.Ed. 1561 (1943) ("depreciation basis is reduced by the amount 'allowable' each year whether or not it is claimed"); 3 *Mertens Law of Federal Income Taxation* § 21.93, at 152 (1990) (in the context of depreciation, adjustment of basis is the amount of the deduction " 'allowable' ... without regard to whether or not the deduction is actually taken, or if taken, to whether or not the deduction reduced income or diminished the tax burden [or whether or not] there was in past years no income against which the deduction for depreciation might have been charged"). Thus, "allowable" deductions are those deductions permitted and not otherwise forbidden or limited by the IRC, whether or not they are actually used and regardless of their lack of tax benefit.

■ No other provision of the Code specifically bars the deduction of investment interest in excess of taxable income. *Cf.* 26 U.S.C. § 163(g) (explicitly cross-referencing specific sections of the Code that may disallow various deductions independently of subsection (d)(1)). Thus, investment interest is "allowable" as a deduction without regard to taxable income. Because § 163(d)(1) was the only provision of the Code that prevented Sharp from taking a full current deduction for the investment interest he paid or accrued in the loss years 1984, 1985, and 1986, that full deduction was allowable but for § 163(d)(1). Since § 163(d)(2) permits the carryover of all investment interest that would be "allowable as a deduction" in the absence of § 163(d)(1), Sharp's deduction may be carried over.

In further support of its position, the government explains that prior to 1969, the enactment date of the carryover provision, taxpayers could deduct investment interest expense against all taxable income, but any expense above the amount of taxable income did not confer a tax benefit and could not be deducted in a later year. Thus, the government argues, allowing taxpayers to carry over interest expense in excess of taxable income would be an expansion of interest deductibility not intended by Congress. We find this reasoning unsupported and unpersuasive against the force of the plain legislative text. While, as the government points out, it is a basic principle of tax accounting that "the tax benefit of any deductible amount that exceed[s] a taxpayer's taxable income for a particular year [is] lost forever, barring some savings provision," § 163(d)(2) is such a savings provision. While the government complains that such a view "abrogates" this basic tax principle, that is exactly the purpose of a carryover provision—to permit an item of expense incurred in one year, but otherwise "lost," to be carried over to a subsequent year and confer a future tax benefit.

■ We also agree with the trial court's conclusion that a carryover of investment interest that is unlimited by taxable income in the loss year is not inconsistent with Congress's objective in enacting the limitation on

investment interest deductions. Congress intended to prevent the use of investment interest deductions to shelter other income from taxation. When an investment "produces little current income, the effect of allowing a current deduction for investment interest is to produce a mismatching of the investment income and related expenses of earning that income." H.R. No. 413, 91st Cong., 1st Sess., pt. 1, at 72 (1969), *reprinted in* 1986–3 C.B. 200, 245. "[T]he excess interest, in effect, is used by the taxpayer to offset other income, such as his salary, from taxation." *Id.* As the Fourth Circuit aptly reasoned when it decided the same question at issue here:

> Tying the interest deductions to investment income prevents taxpayers from using the investment interest expense deduction as a tax shelter for non-investment income and encourages them to invest only in projects that will yield a profit aside from the tax benefits.... By contrast, the limitation urged by the Commissioner, based on earned income, arbitrarily prevents taxpayers with little earned income from reaping the benefit of the deduction for ventures profitable in the long run, but with a low initial payoff. While individuals may ultimately claim more deductions than would have been available prior to the enactment of the investment income limitation and carry-over provisions, they will only be able to do so if their investments generate sufficient income.

*Beyer v. Commissioner,* 916 F.2d 153, 155–56 (4th Cir.1990). We agree with Sharp that a limitation of his carryover to the loss year's taxable income would in fact frustrate the principle of matching by denying taxpayers the opportunity to match current interest expenses with their later-realized revenues and would discourage investments geared to the long term in favor of those which produce immediate returns, a result Congress has not endorsed.

The government also asserts that the "net operating loss" provision of the Code, § 172, lends support to its position because § 172 limits a nonbusiness net operating loss deduction to the amount of gross income not derived from a trade or business. *See* 26 U.S.C. § 172(d)(4). Although the government agrees that § 172 is not directly at issue here, *see supra* n. 5, it urges that the net operating loss provision "mirrors" what should be the same result under § 163(d). Instead of lending support to the government's position, we conclude that the fact that Congress has provided an express limitation in § 172 but not in § 163 indicates that Congress was consciously discriminating in limiting carryovers. "Where Congress includes particular language in one section of a statute but omits it in another ..., it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States,* 464 U.S. 16, 23, 104 S.Ct. 296, 300, 78 L.Ed.2d 17 (1983) (citations omitted).

Finally, the government cites the legislative history of § 163(d) to suggest that Congress intended the carryover to be limited to only those unused interest deductions that did not exceed taxable income in the loss year. We need not resort to the legislative history, however, because the language of § 163(d) is clear and conclusive. "While legislative history may aid our understanding of the function and purposes of [a] statute, and in cases of doubt assist in interpretation of the language, when the legislature has clearly spoken the law, the court's duty is to enforce it as written." *Telectronics Pacing Sys. Inc. v. Ventritex, Inc.,* 982 F.2d 1520, 1524 (Fed.Cir.1992) (citation omitted); *see also Burlington N.R.R. v. Oklahoma Tax Comm'n,* 481 U.S. 454, 461, 107 S.Ct. 1855, 1860, 95 L.Ed.2d 404 (1987) ("Unless exceptional circumstances dictate otherwise, when the terms of a statute are unambiguous, judicial inquiry is complete."). This case does not present exceptional circumstances.

## CONCLUSION

The Court of Federal Claims' decision granting Sharp's motion and denying the United States' cross-motion for summary judgment is affirmed.

***AFFIRMED.***