# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 01-2171/01-2919

_____

Edward J. Kaffenberger;                    *
Cora S. Kaffenberger,                       *
                                            *
            Appellees,                      *       Appeal from the United States
                                            *       District Court for the
      v.                                    *       Western District of Arkansas.
                                            *
United States of America,                   *
                                            *
            Appellant.                      *


_____

Submitted: January 14, 2002
Filed: January 3, 2003

_____

Before WOLLMAN,[1] Chief Judge, HANSEN, Circuit Judge, and OBERDORFER,[2] District Judge.

_____

HANSEN, Circuit Judge.

_____

[1]The Honorable Roger L. Wollman stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the close of business on January 31, 2002. He has been succeeded by the author of this opinion.

[2]The Honorable Louis F. Oberdorfer, United States District Judge for the District of Columbia, sitting by designation.

The United States appeals from the district court's judgment awarding Edward and Cora Kaffenberger refunds of overpaid income taxes based on a jury verdict that found that Edward and Cora Kaffenberger made a timely informal claim for a refund. The United States also appeals the district court's order requiring the United States to pay the Kaffenbergers' costs and attorneys' fees. We affirm in part and reverse in part the district court's judgment regarding the tax refunds and reverse its award of costs and fees.

## I.

There is no dispute that the Kaffenbergers overpaid their tax liability for the years involved. The dispute revolves around whether they timely requested that the IRS give back the overpayment. Edward Kaffenberger was a partner in a partnership with his son. During the late 1980s and early 1990s, Edward was unable to obtain complete financial information about the partnership from his son. As a result, Edward and Cora failed to timely file their personal income tax return, Form 1040, for the years ending December 31, 1988, through December 31, 1993. For each of these years, the Kaffenbergers filed extension requests, which gave them an additional six months to file their returns, and made estimated payments by the tax return's due date in an attempt to cover each year's tax liability, except for the tax year 1990 as discussed below.

The Kaffenbergers filed their 1988 Form 1040 (which was due on October 15, 1990,after the applicable extensions) on February 11, 1991 reflecting a refund due of $26,794. The Form 1040 indicated that the refund should be applied to the following year's (1989) tax liability. The Kaffenbergers had already made an estimated payment of $35,000 against their 1989 tax liability. The Kaffenbergers received a notice from the IRS dated April 15, 1991, stating that they were due a refund of income taxes in the amount of $26,770. The notice of refund from the IRS led the Kaffenbergers to believe that the IRS had not applied the 1988 refund to the 1989 liability. The

Kaffenbergers filed a Form 4868, Application for Automatic Extension of Time to File U.S. Individual Income Tax Return (hereinafter "Automatic Extension Request") for their 1990 tax return on the same day they received the notice, April 15, 1991, a date open under the statute of limitations, and included the amount of $26,700 on the line of Form 4868 for "other payments and credits" to cover their estimated 1990 liability. Edward Kaffenberger testified that he did not make an estimated payment for 1990, as he had done for prior years, because he thought that the refund, as reflected in the notice from the IRS, would cover the estimated 1990 liability. At the time the Form 4868 Automatic Extension Request was filed for 1990, the Kaffenbergers had not yet completed their Form 1040 tax return for 1989.

In 1993, the IRS contacted the Kaffenbergers to discuss the tax returns that they had failed to file. An IRS agent began an audit and undertook to prepare the Kaffenbergers' 1989 Form 1040 on November 30, 1993. The Kaffenbergers retained a Certified Public Accountant (CPA) to prepare their Form 1040s for 1990 through 1992 and submitted those returns to the IRS agent in December 1993. The Form 1040 returns for tax years 1990 through 1992 were filed on March 14, 1994. The 1990 return showed that the Kaffenbergers owed $36,329 to the IRS, as no estimated payments had been made for 1990, and the 1989 return had not yet been completed. The taxpayers received refunds for the 1991 and 1992 returns, which are not in dispute. The IRS agent did not finish and file the 1989 return until July 29, 1994. When the 1989 return was originally prepared by the IRS agent and signed by the Kaffenbergers, it reflected the estimated payment for 1989 of $35,000 and the overpayment from 1988 of $26,770, which totaled $61,770, as payments to be applied against the 1989 liability, resulting in an overpayment in 1989 of $38,309. (Appellant's App. at 35-36.) The IRS agent told the Kaffenbergers that the $38,309 could be applied to the taxes still due on the 1990 return, leaving liability only for penalties and interest. The Kaffenbergers gave the IRS agent a check for $12,161 to cover the penalties and interest on July 24, 1994.

3

The IRS agent called the Kaffenbergers back later the same day and informed them that the $38,309 refund from 1989 could not be used to offset the 1990 tax liability because the statute of limitations for claiming the refund from 1989 had expired. The IRS deemed the 1989 return, filed July 29, 1994, to be the refund claim. The IRS sent formal notice of the denial of the refund claim on April 28, 1995. (Id. at 29-30.) The taxpayers filed Form 1040X for 1989 on September 26, 1995, claiming an additional $3,286 refund based on errors made by the IRS agent in preparing the original return related to depreciation and SEP contributions. (Id. at 37-38.) That claim was also denied as beyond the statute of limitations in a notice dated October 24, 1995. (Id. at 31-32.) The IRS applied overpayments from the years 1994 through 1996 totaling $17,256 toward the Kaffenbergers' 1990 liability. Even after application of the overpayments, the IRS claimed that the Kaffenbergers owed over $64,000, stemming from the 1990 tax liability and related penalties and interest. The Kaffenbergers filed Form 1040X for each of the tax years 1994, 1995, and 1996, in November and December 1997, seeking refund of the overpayments applied to the 1990 liability. The IRS did not respond to those forms.

On October 17, 1997, the Kaffenbergers and the IRS signed two Form 907 Agreements to Extend Time to Bring Suit (hereinafter "Form 907 Agreement") until December 31, 1998; one covered the tax period ending December 31, 1989, and one covered the tax period ending December 31, 1990. The taxpayers filed suit on December 31, 1998, seeking refunds from 1989 (based on the original Form 1040 return and the amended Form 1040X return), refunds from 1994 through 1996 for the overpayments that were applied to the 1990 liability, and an order that the 1990 taxes were paid in full. The district court denied the government's motion to dismiss for lack of jurisdiction, based on the allegation that the suit was untimely filed, or for summary judgment, based on the allegation that the administrative refund claims were untimely. The district court found that the government had waived its sovereign immunity when it entered the Form 907 Agreements and found that a fact issue existed regarding whether the Kaffenbergers made an informal claim for refund.

4

The case proceeded to trial on the issue of whether the Kaffenbergers made a timely request for refund of the 1989 overpayment. The jury returned a special verdict, finding that the Kaffenbergers established "by a preponderance of the evidence that they filed an informal claim for their refund of their 1989 tax overpayment before October 15, 1993." (Appellant's App. at 14.) On March 9, 2001, the district court entered judgment for the Kaffenbergers, ordering a refund of $17,778 and ordering the abatement of the IRS's claim for income taxes related to 1990 in its entirety. On June 5, 1991, the district court granted the Kaffenbergers' motion for costs and attorneys' fees, but limited the fee rate to $125 per hour instead of the requested $175 per hour.

The government now appeals the district court's judgment, arguing that the district court erred in denying its motion for judgment as a matter of law on the informal claim issue, and that the district court lacked jurisdiction to order a refund related to the original 1989 return as well as the overpayments from 1994 through 1996 that were applied to the 1990 liability, and lacked jurisdiction to order the abatement of the 1990 tax liability. The government also appeals the district court's order granting costs and attorneys' fees to the Kaffenbergers.

## II.

The government's appeal involves two statutes of limitations: one governing the time in which a taxpayer may administratively claim a refund from the IRS, and one governing the time in which a taxpayer may bring suit against the United States for recovery of a refund withheld by the IRS. We begin by addressing the statute of limitations for bringing suit, as the outcome of that issue determines the district court's jurisdiction over the bulk of this case.

## A. Statute of Limitations for Bringing Suit Against the United States

Sovereign immunity protects the United States from being sued unless Congress has expressly waived the government's immunity. United States v. Shaw, 309 U.S. 495, 500-01 (1940); United States v. Kearns, 177 F.3d 706, 709 (8th Cir. 1999). A district court lacks jurisdiction to hear a case against the United States unless its sovereign immunity has been waived, and the court's jurisdiction is limited by the scope of the waiver. Kearns, 177 F.3d at 709. "[A] waiver of the government's sovereign immunity will be strictly construed, in terms of its scope, in favor of the sovereign." Lane v. Pena, 518 U.S. 187, 192 (1996). Once consent has been expressly provided and its scope defined, however, the waiver of immunity is liberally construed within the parameters of the consent. Shaw, 309 U.S. at 501.

Congress has expressly waived sovereign immunity for suits against the United States by taxpayers seeking to recover tax refunds. Congress limited that waiver by requiring a taxpayer to file an administrative claim with the Secretary of Treasury before bringing a lawsuit. See 26 U.S.C. § 7422(a) (1994), I.R.C. § 7422(a). Congress further limited the waiver of sovereign immunity by requiring the taxpayer to bring suit within "2 years from the date of mailing by certified mail or registered mail by the Secretary to the taxpayer of a notice of the disallowance of the part of the claim to which the suit or proceeding relates." I.R.C. § 6532(a)(1). Although "[n]o officer by his action can confer jurisdiction[,]" Shaw, 309 U.S. at 501, Congress expressly allows the Secretary to extend the time for filing suit for a refund, and correspondingly to extend the waiver of immunity, as provided in a written agreement with the taxpayer. I.R.C. § 6532(a)(2). Form 907, Agreement to Extend Time to Bring Suit, is generally used to satisfy the extension provision of § 6532(a)(2).

The United States argues that the district court lacked jurisdiction over the refund claim based on the original 1989 Form 1040 because the suit against the

6

United States, as it related to that refund claim, was not filed within the requisite two years of the disallowance notice, dated April 28, 1995, and the IRS did not enter a Form 907 Agreement related to the original 1989 claim.[3] The parties agree that the Kaffenbergers did not file this suit within the requisite two-year period. Thus, the suit was timely only if the IRS agreed to extend the time for bringing suit as provided in I.R.C. § 6532(a)(2).

The IRS entered into two Form 907 Agreements with the Kaffenbergers, which extended the waiver of sovereign immunity to the agreed upon date of December 31, 1998, the date this suit was filed. Both forms were signed on October 14, 1997, by the Kaffenbergers' representative, and on October 17, 1997, by an IRS agent. (Appellant's App. at 8; Dist. Ct. Docket Entry 25, Exh. 5.) Both referenced October 24, 1995, as the date that the notice of disallowance of the claim was mailed. They differed only in that the first Form 907 Agreement covered the tax period ending December 31, 1989, and the second Form 907 Agreement covered the tax period ending December 31, 1990. The district court's jurisdiction hinges on whether either of these Form 907 Agreements extended the time for bringing suit related to the original 1989 return.

The government argues that the first Form 907 Agreement did not apply to the original 1989 refund claim for two reasons: (1) because the Form 907 Agreement referred only to the claim for which the notice of disallowance was sent on October 24, 1995, which was the 1989 Form 1040X amended return as opposed to the original Form 1040 return, and (2) because, even if the Form 907 Agreement applied to the original 1989 refund claim, it was ineffective to extend the statutory period because

_____

[3]This issue involves only the refund claim related to the original 1989 Form 1040 return. The government agrees that the Kaffenbergers' suit is timely for the 1989 Form 1040X amended return and the subsequent refund claims.

the parties entered into the Form 907 Agreement after the limitations period had run for the original 1989 claim.

We reject the first argument because the government conceded prior to trial in its motion to dismiss or for summary judgment that the Form 907 Agreement did in fact apply to both the original and amended 1989 refund claims. (See Appellant's Br. at 38 n.4; United States' Br. Responding to Aug. 31, 2000 Order, Dist. Ct. Docket Entry 34, at 1-2, 3.) The scope of a waiver of the government's sovereign immunity must be strictly construed in favor of the government. Lane, 518 U.S. at 192. So construing Congress's waiver of sovereign immunity, the Kaffenbergers' suit must have been brought within the time frame agreed to by the IRS and the Kaffenbergers. Having strictly construed the scope of the waiver, however, we must liberally construe the waiver within those parameters. Shaw, 309 U.S. at 501. In its submissions to the district court, the government agreed that the Form 907 extended the time for bringing suit on the original 1989 refund claim, even though the Form 907 referred to the date that the 1989 1040X was disallowed. We cannot allow the IRS to renege on that agreement if we are to liberally construe the waiver within the parameters provided by Congress. Further, holding the government to its concession does not allow it to confer jurisdiction upon the court, as the government suggests. See Krein v. Norris, 250 F.3d 1184, 1187 (8th Cir. 2001) (noting that court must determine jurisdiction, even if parties concede the issue); Overhauser v. United States, 45 F.3d 1085, 1088 (7th Cir. 1995) ("[G]overnment officers have no general power to waive statutes of limitations in tax cases."). Rather, it holds the IRS to the agreement that it made, an agreement that Congress authorized it to enter pursuant to I.R.C. § 6532(a)(2). See United States v. Aetna Cas. & Surety Co., 338 U.S. 366, 383 (1949) ("The exemption of the sovereign from suit involves hardship enough, where consent has been withheld. We are not to add to its rigor by refinement of construction, where consent has been announced.") (internal quotations omitted).

The government argues alternatively that it lost the authority to extend the two-year statute of limitations once the limitations period expired, so that even if the Form 907 Agreement included the original 1989 claim, it was incapable of extending the period for bringing suit related to that claim. The government relies on a revenue ruling and the general proposition that an officer lacks the power to waive the United States' sovereign immunity. We respectfully disagree with the government and the revenue ruling upon which it relies.

The power to waive the United States' sovereign immunity rests solely with Congress. As such, it is our duty to determine the scope of the waiver created by Congress in light of Congress's intent. See United States v. Brockamp, 519 U.S. 347, 352 (1997). Congress provided a mechanism that allows the IRS and the taxpayer to extend the period for bringing suit to recover a refund beyond the normal two-year statutory period. I.R.C. § 6532(a)(2) ("The 2-year period prescribed in paragraph (1) shall be extended for such period as may be agreed upon in writing between the taxpayer and the Secretary."). The government argues that the agreement must be entered before the two-year statutory period lapses, and any later agreement is invalid to confer jurisdiction upon the district court. The parties have not cited, nor have we located in our own research, any cases that have addressed whether an extension agreement pursuant to § 6532(a)(2) is effective if entered after the two-year period for bringing suit has ended. Although the government's position is facially appealing, other related statutory provisions lead us to a different conclusion.

Congress enacted § 6532(a)(2) as part of the Tax Reform Act of 1954 on August 16, 1954, see ch. 736, 68A Stat. 816, the same time that it enacted § 6501, see ch. 736, 68A Stat. 803. Section 6501 includes a statute of limitations period within which the IRS must assess a tax, barring the IRS from assessing taxes beyond three years from the date that a return is filed. See I.R.C. § 6501(a). Similar to § 6532, that section contains a provision allowing the taxpayer and the IRS to agree to extend the assessment period beyond the three-year statute of limitations, but contrary to § 6532,

9

§ 6501 expressly requires the agreement to be made "before the expiration of the time prescribed in this section for the assessment of any tax imposed by this title." § 6501(c)(4). Congress did not include similar limiting language in § 6532(a)(2). Comparing the two statutes, enacted together as part of the Tax Reform Act of 1954 and codified within a few pages of each other in the Statutes at Large, we are compelled to conclude that Congress did not intend to prevent taxpayers and the IRS from agreeing, after the two-year statute of limitations has passed, to extend the time in which a taxpayer may bring suit for a refund. See Dep't of Housing and Urban Dev. v. Rucker, 122 S. Ct. 1230, 1234 (2002) (comparing two sections of the Anti-Drug Abuse Act of 1988 and holding that "[t]he forfeiture provision shows that Congress knew exactly how to provide an 'innocent owner' defense. It did not provide one in § 1437d(l)(6)."); Duncan v. Walker, 533 U.S. 167, 173 (2001) ("It is well settled that '"[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."'" (quoting Bates v. United States, 522 U.S. 23, 29-30 (1997), in turn quoting Russello v. United States, 464 U.S. 16, 23 (1983))) (alteration in original); Hohn v. United States, 524 U.S. 236, 249-50 (1998) (applying Russello rule); Sharp v. United States, 14 F.3d 583, 589 (Fed. Cir. 1993) (applying Russello rule to Internal Revenue Code § 163, and holding that where Congress provided express limitations in § 172 but not in § 163, Congress did not intend the limitations to apply to § 163).

The IRS issued a revenue ruling in 1971 which found that a district director lacked authority to enter an agreement to extend the two-year statute of limitations for bringing suit after the period had expired. See Rev. Rul. 71-57, 1971-1 C.B. 405. The IRS relied on its interpretation of "extended" to "mean[] the continuation of an existing period of time with no intervening lapse." Id. We respectfully disagree with the IRS's revenue ruling. In § 6501, the statute limiting the IRS's time frame for assessing taxes to three years from the date the return is filed, Congress allows the IRS and taxpayer to further "extend [the assessment period] by subsequent

10

agreements in writing made before the expiration of the period previously agreed upon." I.R.C. § 6501(c)(4). If Congress had intended "extend" to carry the definition given it by the IRS, there would have been no need for Congress to include the phrase "before the expiration of the period previously agreed upon" in the provision allowing the IRS and taxpayer to enter subsequent extensions under § 6501. We decline to adopt the IRS's definition of "extension" where to do so renders the above quoted portion of § 6501 "insignificant, if not wholly superfluous." Duncan, 121 S. Ct. at 2125. We hold that the IRS acted within its statutory authority in entering into the Form 907 Agreement to extend the time to bring suit on the original 1989 refund claim, even though the statutory time period for bringing suit had lapsed prior to the date of the Form 907 Agreement. Consequently, the district court properly exercised jurisdiction over the original 1989 refund claim.

## B.  Informal Refund Claim

Having concluded that the district court had jurisdiction over this case, we turn to the issue of whether the Kaffenbergers timely filed refund claims related to 1989 at the administrative level. The government argues that the Kaffenbergers are not entitled to any refunds related to 1989 because they failed to bring their administrative refund claims within three years and six months of the date on which the taxes were paid, as required by the Internal Revenue Code. See I.R.C. § 6511(b)(2)(A) (limiting the amount of recovery on a refund claim to the amount of tax paid within three years, plus applicable extensions, prior to the refund claim). The Kaffenbergers concede that the 1989 Form 1040 return filed on July 24, 1994, and the 1989 Form 1040X amended return filed on September 26, 1995, were untimely, as they sought a refund of taxes paid on April 15, 1990. The Kaffenbergers argued to the jury, apparently successfully, that they had made an informal claim for refund when they designated that $26,700 of a prior credit be applied to their 1990 tax liability on the Form 4868 Automatic Extension Request, filed on April 15, 1991, well within three years and six months of April 15, 1990. On appeal, the government

11

argues that there is no evidence to support the jury's finding that the Kaffenbergers made an informal claim for refund.

The government argued in its motion for judgment as a matter of law that the facts did not support a finding of an informal claim, but did not renew the argument in its posttrial motions. We therefore review this issue for plain error to prevent a miscarriage of justice. See Cross v. Cleaver, 142 F.3d 1059, 1070 (8th Cir. 1998). Plain error in a civil suit is an error that is "obvious, or . . . otherwise seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." Champagne v. United States, 40 F.3d 946, 947 (8th Cir. 1994) (internal quotations omitted) (first alteration in original). An obvious error is an error that is "clear under current law." United States v. Caldwell, 97 F.3d 1063, 1069 (8th Cir. 1996). Ultimately, we must determine whether the district court plainly erred in accepting the jury's determination that the facts and circumstances of the case satisfied the requirements of the informal claim doctrine.

Treasury regulations specify what is required of a taxpayer to file a valid claim for refund or credit of taxes previously paid. See 26 C.F.R. § 301.6402-2(b)(1); § 301.6402-3(a). Although the regulation states that a claim that fails to comply with the requirements will not be considered as a claim for refund, § 301.6402-2(b)(1), the Supreme Court has endorsed informal claims filed within the statutory period that have technical deficiencies, as long as a valid refund claim is subsequently made after the period has run. See United States v. Kales, 314 U.S. 186, 194 (1941) (holding that a letter of protest sent by the taxpayer to the collector and Commissioner was a valid informal claim for refund). In essence, an informal claim that puts the IRS on notice that a claim is being made tolls the statute of limitations until the deficiencies are corrected in a subsequent refund claim. See United States v. Comm'l Nat'l Bank of Peoria, 874 F.2d 1165, 1170-76 (7th Cir.1989) (finding an informal claim where the tax issues surrounding the refund claim were involved in litigation and the taxpayers' attorney wrote a letter to the IRS within the statutory time frame stating his

disagreements with the IRS's calculations). Generally, "an informal claim is sufficient if it is filed within the statutory period, puts the IRS on notice that the taxpayer believes erroneous tax has been assessed, and describes the tax and year with sufficient particularity to allow the IRS to undertake an investigation." PALA, Inc. Employees Profit Sharing Plan and Trust Agreement v. United States, 234 F.3d 873, 877 (5th Cir. 2000). The sufficiency of an informal claim depends on the individual facts of each case, "with a view towards determining whether under those facts the Commissioner knew, or should have known, that a claim was being made." Id. (internal quotations omitted). Failure to specify the year does not necessarily defeat the informal claim if other facts suffice to put the IRS on notice of the specific refund sought. See id. at 878 ("The fact that PALA's letter does not specifically mention the year 1991 is irrelevant . . . ."); Am. Radiator & Stand. Sanitary Corp. v. United States, 318 F.2d 915, 921 (Ct. Cl. 1963) ("[P]laintiff was not required, for this informal claim for refunds all of one type, to match particular amounts to particular years, or to point out that this claim related only to 1942, 1943, and 1945 (not to 1944, 1946 or 1947)." (quoting Kales, 314 U.S. at 194) (internal footnotes omitted)). "An informal claim which is partially informative may be treated as valid even though 'too general' or suffering from a 'lack of specificity'--at least where those defects have been remedied by a formal claim filed after the lapse of the statutory period but before the rejection of the informal request. " Id.

At a bare minimum, the Kaffenbergers' informal claim had to contain a written component within the statute of limitations, and must have been followed by a formal claim that remedied any defects in the informal claim. The Form 4868 Automatic Extension Request, which reflected "other payments and credits" of $26,700 and which was filed on April 15, 1991, satisfies the written component. Further, Form 4868 contained the Kaffenbergers' signatures and declarations under penalties of perjury that the information was correct. Cf. Tobin v. Tomlinson, 310 F.2d 648, 651 (5th Cir. 1962) (holding that letter did not constitute informal claim because it was not verified to be under penalty of perjury), cert. denied, 375 U.S. 929 (1963). There

13

is no dispute that the 1989 Form 1040, which was filed on July 29, 1994, and requested a refund of $38,309, and the 1989 Form 1040X, which was filed on September 26, 1995, and requested a refund of an additional $3,286, made formal claims for refund, albeit untimely ones. These forms satisfy the minimum requirements for an informal refund claim. Whether the remaining facts and circumstances satisfy the informal claim doctrine is highly fact intensive. See Comm'l Nat'l Bank, 874 F.2d at 1170. "No hard and fast rules can be applied because it is a combination of facts and circumstances which must ultimately determine whether or not an informal claim constituting notice to the Commissioner has been made. Necessarily each case must be decided on its own peculiar set of facts . . . ." Newton v. United States, 163 F. Supp. 614, 619 (Ct. Cl. 1958) (rejecting Commissioner's application of "guiding principles" distilled from prior cases). In making this factual inquiry, it is important to note that the written component within the statutory period–Form 4868 in this case–need not contain all of the information necessary to put the IRS on notice that a refund was being sought. The written component "should not be given a crabbed or literal reading, ignoring all the surrounding circumstances which give it body and content. The focus is on the claim as a whole, not merely the written component." Estate of Hale v. United States, 876 F.2d 1258, 1262 (6th Cir. 1989) (internal quotations omitted).

Shortly after filing Form 1040 for the 1988 tax period, directing that a $26,794 overpayment be applied to 1989, the Kaffenbergers received a notice dated April 15, 1991, that they were entitled to a refund of $26,770. Evidence introduced at trial revealed that that type of notice normally is not sent when a refund is to be applied to the following year's tax liability. The Kaffenbergers filed Form 4868 the same day, notifying the IRS that they wanted $26,700 of "other payments or credits" to be applied to their 1990 liability. The IRS also had Form 4868 for 1989 on file, with which the Kaffenbergers had paid $35,000 for estimated payments toward their 1989 tax liability. Thus, at the time the IRS received Form 4868 for 1990 in April 1991, the IRS knew that the Kaffenbergers were entitled to a refund of $26,770, that the

Kaffenbergers had requested that the refund from 1988 be applied to their 1989 liability, that the Kaffenbergers had paid $35,000 in estimated payments toward their 1989 liability, that the IRS had recently sent the Kaffenbergers a notice of refund for the same $26,770 the Kaffenbergers had asked to be applied to their 1989 liability, and that the Kaffenbergers had requested $26,700 from "other payments and credits" be applied to their 1990 liability.

The government argues that the Kaffenbergers' failure to include the $26,700 amount on the line for "1989 overpayments allowed as a credit" on the Form 4868 contradicts the Kaffenbergers' assertion that they were claiming a refund from 1989. The jury apparently did not buy that argument, however. We believe that the jury's implicit finding that there is no inconsistency is supported by the evidence, particularly in light of the fact that as of April 15, 1991, the Kaffenbergers had not filed their 1989 Form 1040, so that the exact amount of the overpayment for 1989 was unknown at that time.

In these unique factual circumstances, we cannot say that any error by the district court in entering judgment based on the jury's special verdict was obvious. See Gustin v. United States Internal Rev. Serv., 876 F.2d 485, 488 (5th Cir. 1989) ("[T]here are no hard and fast rules for evaluating the sufficiency of an informal claim, and each case must be decided on its own particular set of facts . . . ."). We believe these facts were sufficient to put the IRS on notice, as of April 1991, that the Kaffenbergers were claiming a refund of $26,700 and that the information held by the IRS described the refund sought with sufficient particularity to allow the IRS to investigate the claim. These facts are not so different from other factual scenarios in which courts have found an informal claim that we could say that the jury's verdict was plainly erroneous. See, e.g., Penn Mut. Indemn. Co. v. Comm'r, 277 F.2d 16, 18-19 (3d Cir. 1960) (holding that a letter attached to a return protesting the constitutionality of the tax and refusing to pay the tax shown due on the return was an informal claim); Cumberland Portland Cement Co. v. United States, 104 F. Supp.

15

1010, 1013-14 (Ct. Cl. 1952) (finding an informal claim where Commissioner notified taxpayer of overassessment and informed taxpayer of need to file Form 843 to protect itself against the running of the statute of limitations, where taxpayer sent letter asking that "a prompt settlement be made in this matter of overassessment" with its signed "Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment," but did not timely file Form 843, as instructed by the Commissioner); Night Hawk Leasing Co. v. United States, 18 F. Supp. 938, 941 (1937) (finding that notation on the back of a check stating "This check is accepted as paid under protest pending final decision of the higher courts" was a valid informal claim). Because we affirm the jury's determination that the Kaffenbergers made a sufficient informal claim for refund within the statute of limitations, they are entitled to a refund of $26,700 from 1989.

## C. Abatement of 1990 Tax Liability & Refund of 1994 Through 1996 Overpayments Applied to 1990 Liability

The district court ordered the government to abate the 1990 tax assessment, to refund $17,778, which the court characterized as a refund of overpayments from 1994, 1995, and 1996 together with interest through January 31, 2001, and to pay postjudgment interest at a rate of 4.83% to the Kaffenbergers. (See Appellant's Add. at 7.) The government argues that the district court lacked jurisdiction to order a refund of the 1994 through 1996 overpayments and to order the abatement of the 1990 liability. For reasons discussed below, we agree with the government. The government does not explain the effect of the district court's lack of jurisdiction, however. Given the complexity of this case, both factually and legally, we begin our analysis by summarizing the facts of the case in light of our holding thus far.

The Kaffenbergers claimed a total overpayment of their 1989 tax liability of $41,595 ($38,309 claimed on their 1989 Form 1040, filed on July 28, 1994, and $3,286 claimed on their 1989 Form 1040X, filed on September 26, 1995) and made

a timely informal claim for refund of $26,700 of that overpayment. The Kaffenbergers concede that their recovery is limited to the $26,700 claimed pursuant to their informal claim, (Appellees' Br. at 18 n.6 & 31-32), and the district court's judgment reflected the limited amount. The IRS assessed the Kaffenbergers' tax liability for 1990 at $36,329 before imposition of interest and penalties and before application of any payments or credits. The Kaffenbergers paid an additional $12,161 against their 1990 tax liability on July 28, 1994, as part of the audit, which the IRS applied against the 1990 liability. The IRS also applied $17,256 worth of overpayments from 1994 through 1996 against the 1990 liability.

Following the jury's verdict, the district court asked the parties to submit calculations for a proposed judgment. The district court noted in its order that the parties submitted widely divergent calculations and that the Kaffenbergers' "calculations best reflect[ed] the jury's special verdict." (Appellant's Add. at 7; Mar. 9, 2001, Order.) The Kaffenbergers submitted a detailed calculation, which netted the $26,700 refund from 1989 against the 1990 liability as of April 15, 1991, and reflected the July 1994 payment of $12,161 as well as the 1994 through 1996 overpayments of $17,256 applied by the IRS to the remaining 1990 liability. The calculation also accounted for penalties and interest. The Kaffenbergers' calculation showed that they had overpaid their tax liability by $17,778, including interest through January 31, 2001. (See Appellees' App. at 121-26.) The government's proposed judgment, on the other hand, limited recovery to a refund of $3,286, which is the amount that the Kaffenbergers claimed on the amended Form 1040X for 1989, plus interest from April 15, 1990, leaving the 1990 tax liability as assessed by the IRS still owing. In reaching this determination, the government argued that the district court lacked jurisdiction over the $38,309 refund claimed on the original 1989 Form 1040 filed on July 24, 1994, because the Kaffenbergers did not file suit within two years of receiving the IRS's notice of disallowance related to that refund claim, an argument the district court, and now we, rejected. (United States' Br. Regarding Computation of Judgment, Dist. Ct. Docket Entry 52.)

17

At this point, we think it important to delineate what about the judgment the government does not appeal. The government does not appeal the fact that the district court netted the 1989 refund against the 1990 tax liability and took into consideration the subsequent payments that the IRS applied against the 1990 liability.[4] Nor does the government appeal the accuracy of the Kaffenbergers' calculations, which resulted in the conclusion that they had overpaid their tax liability, including penalties and interest, by $17,778, when the $26,700 refund was taken into consideration. Rather, the government argues only that the district court lacked jurisdiction to order that the 1990 tax liability be abated in full and that the district court lacked jurisdiction to order a refund of the 1994 through 1996 overpayments that were applied against the 1990 liability. Thus, our review is limited to those issues.

---

[4]Only if the district court's decision to net payments was somehow outside its jurisdiction would we be required to review the issue of netting. See Krein, 250 F.3d at 1187(noting that court must determine jurisdiction, even if parties concede the issue). Although the Tax Code leaves the decision to net payments to the IRS's discretion, see I.R.C. § 6402(a), the district court is not deprived of jurisdiction over the issue. See N. States Power Co. v. United States, 73 F.3d 764, 768 (8th Cir.) (noting that the IRS's failure to net payments under § 6402(a) may be reviewable for an abuse of discretion in the proper case), cert. denied, 519 U.S. 862 (1996); Horton Homes, Inc. v. United States, 936 F.2d 548, 550 (11th Cir. 1991) (holding that district court had subject matter jurisdiction over claim that IRS erroneously failed to abate interest, but that IRS's refusal to do so was not judicially reviewable because the Tax Code left the decision to the IRS's discretion). See also I.R.C. § 6402(f) (limiting courts' jurisdiction to review decisions under subsections (c), (d), or (e), without mentioning courts' jurisdiction concerning subsection (a)). Thus, we will not review the propriety of the district court's judgment netting the 1989 overpayment against the 1990 liability because the government did not raise the issue.

## 1. Abatement of the 1990 Liability

The government argues that the district court lacked jurisdiction to order the abatement of the Kaffenbergers' 1990 tax assessment. We agree. Full payment of a tax assessment is a prerequisite to suit in federal district court; taxpayers may bring prepayment suits only in United States Tax Court. Without full payment of the assessment, the district court lacks subject matter jurisdiction over the suit as it relates to the 1990 liability. See 28 U.S.C. § 1346(a)(1); Flora v. United States, 362 U.S. 145, 146, 158-63 (1960). The Kaffenbergers did not pay the 1990 assessment in full prior to bringing this suit in district court. Their argument that the 1989 overpayment satisfied the 1990 liability is irrelevant to their obligation to pay the full amount of the 1990 assessment before filing suit related to that liability in district court. See Hutchison v. United States, 677 F.2d 1322, 1326 (9th Cir. 1982) ("[Taxpayer's] mere claim that the 1973 liability was satisfied by a then-disputed credit from 1971 does not establish full satisfaction of the 1973 liability."). What this means is that the district court lacked authority to adjudicate the accuracy of the 1990 assessment. Without authority to determine the accuracy of the 1990 liability, the district court lacked authority to declare it abated.

## 2. 1994-1996 Overpayments Applied to 1990 Liability

The government also argues that the district court lacked the authority to order a refund of the 1994 through 1996 overpayments that were applied by the IRS to the unpaid 1990 tax liability. The government's argument is twofold: (1) the Kaffenbergers' failure to file an administrative claim related to 1990 precludes the district court from exercising jurisdiction related to subsequent credits applied to the 1990 tax liability; and (2) the Kaffenbergers' failure to pay the full assessment for the 1990 tax liability precludes them from bringing suit in district court for a refund of subsequent credits applied to the 1990 liability. We agree with the IRS's second position and therefore need not address the first.

19

Once the IRS applied the overpayments from 1994 through 1996 to the 1990 tax assessment, as the IRS had the discretion to do, see I.R.C. § 6402(a), those funds became credits against the 1990 tax liability. See I.R.C. § 7422(d) ("The credit of an overpayment of any tax [i.e., 1994-1996] in satisfaction of any tax liability [i.e., 1990] shall, for the purpose of any suit for refund of such tax liability [i.e., 1990] so satisfied, be deemed to be a payment in respect of such tax liability [i.e., 1990] at the time such credit is allowed"); Donahue v. United States, 33 Fed. Cl. 500, 605 (Ct. Cl. 1995) (holding that application of an overpayment from 1988 to a tax liability for 1985 was deemed a payment against the 1985 liability on the date the IRS applied the 1988 overpayment to the 1985 liability for purposes of § 6511(a)); Republic Petroleum Corp. v. United States, 613 F.2d 518, 525 n.19 (5th Cir. 1980) ("[T]axpayer's 1960 and 1962 credits are treated like any cash payment made by taxpayer to satisfy his deficiency for 1959, and he can recover a refund of them to the extent he overpaid his 1959 tax." (emphasis added)). The Kaffenbergers' claim related to the 1994 through 1996 overpayments is based solely on their assertion that there is no 1990 liability against which to apply the overpayments. In other words, what they are seeking is an adjudication of their 1990 tax liability. As we have just held, the Kaffenbergers' failure to pay the full 1990 assessment prior to bringing this suit deprived the district court of jurisdiction over claims related to the 1990 assessment. Because the overpayments became credits against the 1990 tax liability when the IRS so applied them, we hold that the district court lacked jurisdiction to order a refund of the overpayments from 1994 through 1996 that were credited against the 1990 liability.

Having so held, we disagree with the district court's characterization of the $17,778 as a refund of the 1994 through 1996 overpayments. Upon closer examination, we believe that that amount reflects an order to refund the $26,700 overpayment from 1989. As made clear by the detailed calculations submitted by the Kaffenbergers, the $17,778 figure is the result of refunding the 1989 overpayment after taking into consideration the 1990 liability as assessed by the IRS and the

20

payments applied to that liability by the IRS. The district court's inability to adjudicate the Kaffenbergers' 1990 liability and to declare the parties' rights related to that liability does not render the court incapable of recognizing the payments already applied by the IRS against the Kaffenbergers' 1990 liability. As noted, the government does not appeal the calculation netting the $26,700 overpayment from 1989 against the 1990 liability or the accuracy of the $17,778 amount. Faced with the parties' disparate calculations for judgment, we believe that the district court's ultimate conclusion was correct that the Kaffenbergers were entitled to a refund of $17,778 to carry into effect the jury's special verdict.

To be clear, we do not pass on any other disputes that the IRS and the Kaffenbergers might have regarding the 1990 liability. Rather, we affirm the district court's judgment to the extent that it ordered the refund of the $26,700 overpayment from 1989 and calculated that this amount, when considered with the other payments applied to the 1990 liability by the IRS, resulted in an overpayment by the Kaffenbergers of $17,778.

### D. Attorney's Fees

The district court ordered the government to pay the Kaffenbergers' costs and attorney's fees, although the fee rate was reduced from the rate requested by the Kaffenbergers. The Internal Revenue Code authorizes an award of reasonable litigation costs to the prevailing party in a suit by or against the United States in connection with a tax refund. I.R.C. § 7430(a). A taxpayer is not considered a "prevailing party," and is not entitled to litigation costs, if the government's position was substantially justified. § 7430(c)(4)(B). "The position of the United States is substantially justified if it has a reasonable basis in both law and fact, a determination made on a case by case basis. The taxpayer bears the burden of proving that the government's litigation position was not substantially justified." United States v. Bisbee, 245 F.3d 1001, 1007 (8th Cir. 2001) (internal citations omitted). We will

21

reverse the district court's grant of costs and fees under I.R.C. § 7430 only if the district court abused its discretion. Id.

The district court found the government's position not substantially justified for the same reasons it had previously denied the government's motion for summary judgment and because the jury ultimately found in favor of the Kaffenbergers. (Appellant's Add. at 9-10.) Although a jury's verdict is relevant to whether the government's position is substantially justified, it is not determinative, especially where the jury's finding is based on the preponderance of the evidence, as in this case. See Wilfong v. United States, 991 F.2d 359, 367 (7th Cir. 1993) (reversing an award of fees where the district court's only valid explanation of its award was the jury's verdict). Similarly, fact disputes that preclude summary judgment do not establish that the moving party's position is not substantially justified.

The Kaffenbergers assert that the IRS acted in bad faith by not accepting their factual claim that they made a valid informal refund claim, and that the IRS tried to keep them from going to trial. The IRS was not required to acquiesce in the taxpayers' claim that they made a valid informal claim. Our judicial system allows all litigants, including the IRS, to litigate their differences through trial if the parties cannot settle them. That does not make the IRS's position not substantially justified. The Kaffenbergers' equitable arguments do not address whether the IRS's position was substantially justified, which the Kaffenbergers must prove if they are to be awarded litigation costs.

Reviewing the record, we believe that the IRS's position was substantially justified and the district court abused its discretion in awarding litigation costs to the Kaffenbergers. Given the state in which the issue of the informal claim reached us on appeal, we reviewed the issue for plain error. The fact intensive nature of the informal claim doctrine led us to conclude that the jury's findings are supported under that standard of review. Factually, we believe that this was a close case and may

22

border on the outer reaches of the informal claim doctrine. It was by no means clear that the Kaffenbergers made an informal claim sufficient to toll the statute of limitations until their formal claim was filed. See Comm'l Nat'l Bank, 874 F.2d at 1170 (characterizing the adequacy or sufficiency of an informal refund claim as primarily a question of fact). As such, we must conclude that the IRS's position that the Kaffenbergers had not made an informal claim for a refund was substantially justified. We reverse the district court's award of costs and fees to the Kaffenbergers.

## III.  CONCLUSION

We reverse the district court's judgment to the extent it ordered the abatement of the 1990 tax liability, as well as its order awarding fees and costs to the Kaffenbergers. We affirm the district court's judgment to the extent it implicitly ordered the government to refund $26,700 to the Kaffenbergers, which, after netting that refund against the 1990 liability and subsequent payments and credits, resulted in an overpayment by the Kaffenbergers to the IRS of $17,778, including interest and penalties through January 31, 2001. We also affirm the district court's judgment ordering postjudgment interest on the Kaffenbergers' refund. Although the 1990 liability is not abated by order of court, we do make clear that the $17,778 refund is the result of applying the 1989 informally claimed refund against the 1990 liability of $36,329 as assessed by the IRS and as detailed in the Kaffenbergers' calculations submitted to the district court for calculation of the judgment.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

23